OPINION OF THE COURT
Jeremiah J. Moriarty, J.
The State moves for dismissal of the above-referenced claim for failure to timely file. Claimant cross-moves for permission to file a late claim. The well documented facts as they appear from the supporting affidavits and exhibits are as follows.
On February 26, 1975, claimant purchased, by a bid at a public auction, certain premises owned by the State of New York. The date of delivery of the letters patent was scheduled to be July 7, 1975. During the interim between the date of purchase and the conveyance, claimant had neither title to, nor possession of, the premises.
During that time and on March 15, 1975, certain acts of vandalism occurred and damage was done to the premises. Charles F. Flanagan, Bureau Chief, Office of General Services, acknowledged claimant’s notification of the vandalism and consequent damage by letter to claimant of March 27, 1975. By letter dated June 18, 1975, Richard J. Higgins, Executive Deputy Commissioner of the Office of General Services, advised claimant that, despite the vandalism, the State was precluded from reducing the sale price of the property after *240 public sale in which other bidders participated. He noted that the information, with regard to the vandalism, was being investigated and that any claim of vandalism or other damage to the premises would be treated as a separate matter.
Mr. Higgins, by letter dated July 3, 1975, just four days prior to the scheduled transfer of title, specifically acknowledged State responsibility for the damage which resulted from the vandalism of March 15 "in so far as it is ascertainable.” Title was transferred on July 7, 1975 and negotiations for the settlement of the damage claims continued.
To that end, claimant submitted various estimates of damage and the parties appeared to agree upon a figure of $20,000 at a meeting on January 6, 1977 at the office of Charles F. Flanagan, Bureau Chief. Then, by letter dated March 4, 1977, Mr. Flanagan informed claimant’s attorney that:
"Apparently the Attorney General has recently adopted the policy of not entering into settlements on the basis of an informal claim and an agency recommendation. I have also been told that the Attorney General does not welcome any independent agency involvement with a claimant or potential claim.
"Therefore, I can only advise you to commence an action in the Court of Claims and in due course, we will input to the Attorney General our opinion on the claim.”
Claimant filed its claim on May 26, 1977 and the State filed its motion to dismiss on July 5, 1977. Claimant thereafter filed its cross motion to file a late claim on July 8, 1977.
The rights and liabilities of a buyer and seller of real property with regard to risk of loss between the time of contract and conveyance are fixed by the Uniform Vendor and Purchaser Risk Act (General Obligations Law, § 5-1311). It provides in relevant part:
"1. Any contract for the purchase and sale or exchange of realty shall be interpreted, unless the contract expressly provides otherwise, as including an agreement that the parties shall have the following rights and duties:
"a. When neither the legal title nor the possession of the subject matter of the contract has been transferred to the purchaser * * * (2) if an immaterial part thereof is destroyed without fault of the purchaser or is taken by eminent domain, neither the vendor nor the purchaser is thereby deprived of the right to enforce the contract; but there shall be, to the *241 extent of the destruction or taking, an abatement of the purchase price.”
 The rules which govern risk of loss between buyer and seller have been held applicable to judicial sales of property (New York Med. Coll, v 15-21 East 111th St. Corp., 90 NYS2d 591; Geist v State of New York, 3 Misc 2d 714) and there appears to be no exception which would exempt the State, as the seller of real property, from the effects of those rules. Thus, the State had a legal obligation to abate the purchase price at the date of the conveyance and, in fact, the State acknowledged that legal responsibility through the afore-mentioned letter of Richard J. Higgins, Executive Deputy Commissioner of the Office of General Services, dated July 3, 1975.
It is the opinion of this court that the State’s motion to dismiss ought to be denied based upon notions of fairness and equitable estoppel. We are here faced with one of those rare and exceptional cases where application of the doctrine of equitable estoppel against the State is appropriate. (Eden v Board of Trustees of State Univ. of N. Y., 49 AD2d 277, 284, mot for stay den 38 NY2d 938.) The State, in effect, requests this court to sanction conduct whereby the State has invited a putative claimant to negotiate a claim in good faith without litigation, to then tersely break off negotiations and invite the claimant to pursue his remedy via litigation; and finally, to turn around and assert that the claimant’s attempt to litigate the matter is untimely. Clearly, the State does not approach the court with clean hands, and in fact, can be properly characterized as the sole cause for delay, if there is any, in the claimant’s prosecution of this matter. Upon such a state of the record, it would be unfair, as well as unjust, to allow the State to succeed on this motion.
The situation which is here presented is not too dissimilar from that in Robinson v City of New York (24 AD2d 260). In Robinson, plaintiff suffered flood damage on January 1, 1963 and filed a notice of claim with the city on March 28, 1963. Under the applicable statutes of the General Municipal Law, plaintiff was required to commence action against the city within one year and 90 days from the accrual of the cause of action. In the meantime, the city demanded, on April 30, 1963, an examination óf one of the plaintiffs on June 11, 1963. By written stipulation of the parties, the examination was adjourned from time to time, and on December 11, 1963 one of plaintiffs was examined. The examination was not then com *242 pleted but instead was adjourned sine die. On May 11, 1964, the city comptroller advised plaintiffs that the city did not intend to complete the examination because the time for the commencement of the action had expired. Immediately thereafter, on May 14, 1964, plaintiff commenced an action, the city interposed the defense of limitation of action and plaintiff moved to strike that defense. The court granted the motion on principles of equitable estoppel: "The continuance of the examination would have a tendency to encourage settlement negotiations and the stipulation afforded the Comptroller the opportunity of continuing such negotiations with plaintiffs free from the embarrassment and the incidental expense of a pending action.” (supra, p 264.)
Although the facts in Robinson are not precisely parallel to this case, the application of the doctrine to estop the State from the assertion of a defense of limitations, through which it seeks to achieve dismissal of an otherwise meritorious claim, furthers the same purpose. That is, the State should not be heard to promise to negotiate a damage claim in good faith; then, in bad faith, turn around and break off negotiations and simultaneously cut off the only other effective remedial action left to claimant.
The court is well aware that the State’s motion is addressed to the question of subject matter jurisdiction in that the claim was apparently not filed within the time limitations set forth in subdivision 4 of section 10 of the Court of Claims Act. We are further aware that the doctrine of equitable estoppel is one typically applied, in situations analogous to this one, to prevent the unjust assertion of a defense of limitations. Still, the facts in this case speak so strongly (and as the court in Robinson, which applied the doctrine to prevent assertion of what is considered to be a condition precedent to suit rather than a statute of limitations) we feel that the State’s bad faith should not be allowed to result in the unavailability of a remedy to this claimant.
In any event, claimant has cross-moved for permission to file a late claim pursuant to subdivision 6 of section 10 of the Court of Claims Act. Without dwelling upon the various factors which must be considered on such an application, suffice it to say that in the court’s opinion, each and every one has been satisfied. Therefore, although unnecessary for consideration since we do not find that the claim is subject to dismissal for untimeliness, we would grant the cross motion if *243 that were the only means to insure the availability of a forum for the adjudication of the claim should the State persist in its refusal to conclude negotiations and arrive at a settlement.
Based upon the foregoing, it is ordered, that the State’s motion to dismiss be and hereby is denied, and it is further ordered, that the claimant’s cross motion for permission to file a late claim be and hereby is denied as moot in view of the court’s disposition of the State’s motion.