OPINION OF THE COURT
Fuchsberg, J.
In the rather unusual circumstances presented by this case, we hold that the People are estopped from asserting the one-year limit of CPL 460.30 to defeat defendant’s motion for an extension of time to appeal his criminal conviction.
After his conviction in Orleans County Court on the charge of possession of a forged instrument in the second degree, on April 18, 1975 James Thomas was sentenced to an indeterminate term of from three and a half to seven years. At that time the Presiding Judge informed the defendant of his right of appeal, specifically advising him that the time within which to do so was 30 days, and that assigned counsel would assist him in filing a notice of appeal. Immediately after sentencing, according to the defendant, he informed counsel of his desire to appeal and the latter assured him that he would file the necessary notice.
But no notice was ever filed. Indeed, he received no word from the lawyer for nearly three months. Apparently still anxious to obtain a review of his conviction, at this juncture he took matters into his own hands. However, despite his due diligence, unschooled in the intricacies of appellate practice, he mistakenly proceeded by mailing to this court a document entitled "Notice of Motion to Appeal in Forma Pauperis” accompanied by an affidavit in which he stated "I am aware of my right to appeal, and that I am filing a notice of appeal” and requested the appointment of counsel for the prosecution of the appeal he no doubt believed he had thus initiated. The clerk at the Court of Appeals, in a letter to the defendant dated July 15, 1975, explained that the motion should properly have been addressed to the Appellate Division and indicated that copies of the papers had been forwarded to the clerk of the Orleans County Court and to assigned counsel.
Defendant having followed up by promptly forwarding the papers to the Appellate Division, its consultation clerk mailed the Orleans County District Attorney’s office a form reporting that Thomas had moved for "permission to prosecute an appeal” and requesting certain information, namely, the date *41 of entry of the order from which the appeal was being taken, the date on which the District Attorney’s office had received a notice of appeal, and the date on which the defendant had filed a notice of appeal in the county clerk’s office. The District Attorney was instructed to reply by August 13. That date having come and gone without a reply, the Appellate Division dispatched a second letter of inquiry. It too went unanswered.
The District Attorney has never proffered any explanation for his disregard of the correspondence of a high court of this State. Nor does he contend that the defect in defendant’s appeal was not known by his office at that time. However, despite the District Attorney’s failure to respond, the Appellate Division, acting on the logical assumption that a notice of appeal had been timely filed, on September 8, 1975 issued an order granting defendant’s application to proceed as a poor person and chose the original assigned counsel as his counsel on the appeal. Though copies of the order were sent to the District Attorney and the newly redesignated counsel, neither notified the court that a notice of appeal had never been filed in the case. Thus, on three separate occasions, while his default was still curable, and under circumstances that officially brought home the fact that defendant was proceeding as though a live appeal were pending, the District Attorney sat back and maintained an unbroken silence while defendant’s last chance to obtain the status of an appellant was ebbing away.
So things continued for 18 months. Meanwhile the defendant, continuing to manifest his desire to appeal, though incarcerated, unsuccessfully sought other available relief.[1] It was not until March 29, 1977, after the defendant had filed a pro se motion for reversal of his conviction in the Appellate Division, and his right to move under CPL 460.30 had long since expired, that the District Attorney, alert and zealous to defeat the motion, for the first time made known that a proper notice of appeal had never been filed. The denial of the motion brought with it a vacatur of the order permitting defendant to appeal as a poor person. Having secured another lawyer, the defendant at long last was advised to make a CPL 460.30 motion. The motion was denied on the law by the Appellate Division because under that section it was required *42 to have been made within one year after the time for taking an appeal had expired, in other words by May 18, 1976.[2] 3****It is from the denial of this motion that defendant has appealed.
CPL 460.30 "plainly and precisely deals with and encompasses the relief’ provided in People v Montgomery (24 NY2d 130). (See People v Corso, 40 NY2d 578, 580.) We there held that, upon a showing that a defendant had not been informed of his right to appeal and had a genuine appealable issue, he was entitled to "be resentenced so that his time to appeal will run anew” (People v Montgomery, supra, p 134; see, also, People v Rivera, 39 NY2d 519, 525). The same remedy was afforded in cases in which a defendant’s failure to appeal was due to un-co-operative prison officials (People v Hairston, 10 NY2d 92) or to his lawyer’s assurance that an appeal would be taken in his behalf (People v Callaway, 24 NY2d 127). CPL 460.30 defined the means by which such claims could be raised (People v Corso, supra).
As pertinent there, CPL 460.30 (subd 1) provides, inter alia, that upon motion by a defendant who has failed to file a notice of appeal "the time for the taking of such appeal be extended to a date not more than thirty days subsequent to the determination of such motion, upon the ground that the failure to file such notice of appeal * * * in timely fashion resulted from improper conduct of a public servant or from improper conduct, death or disability of the defendant’s attorney. Such motion must be made with due diligence after the time for taking of such appeal has expired, and in any case not more than one year thereafter.”[3]
To excuse his failure to file a notice of appeal within the required 30-day period, the defendant relies on his assigned counsel’s inaction. Thus, his claim falls squarely within the embrace of the statute. But the District Attorney argues that the one-year time limit constitutes an inflexible bar to the defendant’s appeal. While we concur in his characterization of *43 the statute’s time period, we reject the conclusion to which it would lead in this case.
The one-year limitation on the bringing of a Montgomery claim by means of a 460.30 motion has been a part of the statute since its inception, remaining unchanged despite at least two legislative re-examinations (see L 1970, ch 996, § 1; as amd by L 1971, ch 671, § 6; as amd by L 1977, ch 699, § 4). The purpose of the time limit, like that of any Statute of Limitations, was to eliminate stale Montgomery claims, but it served as well the ameliorative goal of automatically extending for an extra year the time to appeal for those whose right to do so had been infringed. Our statement in Corso that CPL 460.30 motions "may not be made more than one year after the time for taking an appeal has expired” was unequivocal (40 NY2d 578, 581). We remain convinced that strict construction is appropriate since the time limits within which appeals must be taken are jurisdictional in nature and courts lack inherent power to modify or extend them (see Pollak v Port Morris Bank, 257 NY 287, 288; People v Harres, 41 AD2d 999; Pitler, New York Criminal Practice Under the CPL, § 104.23, pp 790-791, and 1979 Cumm Supp, p 520).
Nevertheless, because the omissions on the part of the prosecutor, though no doubt made more critical by assigned counsel’s less than assiduous performance, frustrated the good faith exercise of the defendant’s right to the remedy of CPL 460.30, the People should be estopped from invoking the bar of the one-year limit (cf. Bender v New York City Health & Hosps. Corp., 38 NY2d 662). That the defendant made diligent efforts to preserve his right to appeal cannot be denied. Nor can it be disputed that but for the cumulative effect of the prosecutor’s inaction, the defendant would have learned of his failure to file an effective notice of appeal early enough to make timely application for relief.
Crucial and most seriously prejudicial to the defendant’s attempted pro se appeal was the District Attorney’s unresponsiveness to the Appellate Division’s repeated inquiries in August, 1975. As indicated by the prepared form it sent, the Appellate Division routinely relied on the District Attorney as a source of information on pending criminal appeals. Not only was it practical for the court to seek data from the defendant’s adversary, but also eminently rational in view of the broader duty of the prosecutor to function in the interest of justice and fair play as a representative of the public interest *44 (see People v Fielding, 158 NY 542, 547). And, especially in pro se proceedings, the court’s solicitation of data from the prosecutor’s office enabled it to offer needed advice to those who might otherwise unintentionally forfeit their rights. Here, the information was sought by the court precisely to determine whether a notice of appeal had been timely filed by the defendant. The prosecutor’s acknowledgment of the court’s reliance, by virtue of his past compliance with identical requests, coupled with the status of the District Attorney’s office as a "quasi-judicial” entity (see People v Adams, 21 NY2d 397, 402; People v Fielding, supra, p 547), makes more conspicious the dereliction in this case. Two clear requests for the information were ignored. And, despite the mailing of the order granting the defendant poor person status and assigning counsel in September, 1975, the glaring defect in his appeal was not called to the court’s attention until one and a half years later.
Whether the delay was the result of indifference or carelessness does not matter. There was a clear abuse of the prosecutor’s 0 responsibility to act with reasonable promptness on his knowledge (cf. People v Stottlemeyer, 9 AD2d 1022). The egregiously long silence from the District Attorney inevitably lulled the defendant, and apparently the Appellate Division, into falsely accepting the appeal as properly brought. Having by his own nonfeasance made unlikely the discovery and correction of the defect, the District Attorney should now be estopped from raising the time bar of CPL 460.30 (see Bender v New York City Health & Hosps. Corp., 38 NY2d 662, 668, supra [Corporation Counsel estopped from raising time limit of section 50-i of the General Municipal Law after lengthy period of acquiescence]; Buffalo Hebrew Christian Mission v City of Syracuse, 33 AD2d 152, 156 [city estopped from raising 15-day limitation on tax exemption actions where dilatory conduct of city officials deterred plaintiff from securing exemption]). The classic elements of estoppel are all present here: there was a duty to speak, violation of that duty by the prosecutor, and consequent detrimental reliance on the part of the defendant (see La Porto v Village of Philmont, 39 NY2d 7; Bender v New York City Health & Hosps. Corp., supra).
Developments after August, 1975 did not lessen the seriousness of the District Attorney’s inaction but in fact heightened it. Interpreting the prosecutor’s conduct as tacit acquiescence, the Appellate Division processed the appeal and thus, under *45 standably, compounded the error by issuing the order granting defendant permission to proceed as a poor person and assigning counsel. Given the District Attorney’s continued failure to supply the data necessary for any consideration of timeliness, and no doubt having rejected as incredible the possibility that such pertinent information would be withheld, there seemed no reason then for the court to deny defendant the requested relief.[4] Nor was it to be presumed by the prosecutor that subsequent communications between Thomas and his appointed counsel would relieve him of the obligation to supply such information, particularly in this instance. Although we find it regrettable that defendant’s counsel permitted himself to overlook the procedural misstep, admittedly his representation of Thomas was, at a critical juncture, interrupted for several months while, in contrast, the prosecutor had a continuing responsibility.
It follows that the order of the Appellate Division should be reversed and the matter remitted for consideration on the merits.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur with Judge Fuchsberg.
Order reversed and the case remitted to the Appellate Division, Fourth Department, for further proceedings in accordance with the opinion herein.

. In December, 1975, the defendant unsuccessfully moved the Orleans County Court for an order to be resentenced as a first felony offender. In May, 1976, a writ of habeas corpus was sought but denied by the State Supreme Court.

. The initial order of the Appellate Division having failed to state "that the determination was made up on the law alone” (CPL 460.30, subd 6), defendant successfully moved to resettle the order to exclude the possibility that the decision was premised on an exercise of discretion and, hence, to permit an appeal to our court (People v Thomas, 44 NY2d 759).

. Subsequent amendments have expanded the scope of the statute to encompass the failure to file a timely application for a certificate granting leave to the Court of Appeals, and to provide as an additional ground for relief a defendant’s inability to communicate with his attorney due to incarceration (see CPL 460.30, subd 1, as amd by L 1977, ch 699, § 4).

. CPLR 1101 (subd [a]) provides that "[u]pon motion of any person, the court in which the action is triable, or to which an appeal has been or will be taken, may grant permission to proceed as a poor person”. Thus, even without knowing when a notice of appeal had been filed, the court could properly issue its order on the assumption that an appeal "will be taken”. The record does not disclose whether any effort was made by the Appellate Division to contact the Orleans County Court in order to obtain some of the information unsuccessfully sought from the District Attorney.