OPINION OF THE COURT
Donald J. Corbett, Jr., J.
After originally seeking dismissal of this personal injury claim on the ground that claimant failed to timely serve a claim or a notice of intention to file a claim, defendant was advised by claimant’s counsel that a notice of intention had indeed been timely served and filed. Defendant then modified its motion by alleging that the notice of intention had not been served in a manner authorized by law, thereby rendering such service a nullity and depriving this court of subject matter jurisdiction.
Claimant alleges that, as a result of the defendant’s negligence, he was shot on September 30, 1987 by another inmate at Sing Sing Correctional Facility. Since the claim was filed on April 27, 1988, more than 90 days following its accrual, its timeliness is dependent on the notice of intention, which was filed on November 30, 1987 and served on December 3, 1987 (see, Court of Claims Act § 10 [3]).
The answer herein, filed on May 31, 1988, contained no reference to the defendant’s subsequent contention that improper service of the notice of intention rendered the claim jurisdictionally infirm. Court of Claims Act § 11 (c), providing for the waiver of any jurisdictional objection relating to manner of service not set forth in the answer or in a preanswer dismissal motion, did not take effect until July 18, 1990 (L 1990, ch 625), and thus is not applicable here. The legislative enactment of section 11 (c), mandating resolution of jurisdictional issues at the outset of the litigation, was undoubtedly motivated by situations such as the present one, to wit, where the dismissal motion was only made after the expiration of the time when this claimant could have sought permission to file a late claim (Court of Claims Act § 10 [6]; CPLR 214).
I directed that a plenary hearing be held with respect to the factual and legal issues surrounding the service of the notice of intention. Claimant’s process server, Frank Kerstein, testified that he has been licensed by the New York City Department of Consumer Affairs as a process server since 1985, and that he had been engaged to effect service of the notice of intention herein upon the defendant. Kerstein related that, on *1008 December 3, 1987, he proceeded to an office of the Attorney-General at 120 Broadway in Manhattan, where the listing for the Attorney-General on the directory in the building’s lobby included an entry reading "Service of Process,” specifying a room on the 24th floor.
Kerstein testified that he handed the notice of intention to the man sitting in a glass-enclosed booth in that room on the 24th floor, and asked him "Can you take these?” Kerstein testified that "he looked at it, he took it, and he stamped a work ticket that I return to the process agency. Then, I left.”
Kerstein averred that he knew the person in the booth — one Milton Maliavsky — because he had served him, on prior occasions, with papers intended for the Attorney-General, albeit conceding under cross-examination that he did not know Maliavsky to be an Assistant Attorney-General, nor did he ask him if he was an Assistant Attorney-General.
Defendant presented the testimony of Seth Corwin, who in 1987 was Deputy Bureau Chief in the office of the Attorney-General at 120 Broadway with the Claims Bureau, which is responsible for defending the State of New York in the Court of Claims. He testified that the Claims Bureau was on the 25th floor while the Litigation Bureau was on the 24th floor, and since claims and notices of intention must be personally served on an Assistant Attorney-General, receptionists in the Claims Bureau were instructed to get an Assistant Attorney-General to receive service when someone appeared with such a document. He averred that "members of other bureaus were instructed along those lines.” According to Corwin, the booth on the 24th floor was intended for service of papers concerning article 78 and other Supreme Court proceedings upon the Litigation Bureau, and clerks who sat in the booth had been instructed that any papers involving the Court of Claims were to be referred to the 25th floor.
Under cross-examination, Corwin conceded that there was no sign or other indication on the 24th floor indicating that Court of Claims papers were to be served elsewhere. His recollection was that the lobby directory stated "Service of Papers — 24th floor.” Corwin did not know Maliavsky and did not know what instruction he had received from his superiors. He conceded that there had been "several problems” with respect to the instructions given to the Litigation Bureau clerks and that the instructions had to be "reinforced” every so often.
*1009 Defendant relies on Court of Claims Act § 11, which provided that a claim or notice of intention must be served personally or by certified mail, return receipt requested, upon the Attorney-General,[1] and on CPLR 307 which provides that personal service shall be made by delivery to the Attorney-General or to an Assistant Attorney-General. Since Maliavsky was not an Assistant Attorney-General, defendant urges that the purported service of the notice of intention upon him was a nullity, and that the instant claim is therefore jurisdiction-ally defective.
Claimant raises two arguments in opposition to the defendant’s motion. Initially, claimant contends that, under the doctrine of equitable estoppel, the service of the notice of intention was proper. Second, claimant argues that, even if there was a defect in the manner of service, it relates to the issue of in personam jurisdiction over the defendant, not the subject matter jurisdiction of the court, and that the defendant waived its objection by failing to raise it in the answer (see, CPLR 3211 [a] [8]; [e]). The enactment of section 11 (c) resolved the waiver issue with respect to answers filed subsequent to July 18, 1990, and it specifically requires early identification of jurisdictional questions relating to timeliness or manner of service, assuring that the availability of section 10 (6) relief will no longer disappear behind a veil of silence, as was the case herein. Thus, I am presented with an archaic and unusual set of circumstances that, by virtue of the enlightened amendment of our governing statute more than two years ago (L 1990, ch 625), is not likely to recur.
Generally, estoppel may not be applied against a governmental entity (Matter of Daleview Nursing Home v Axelrod, 62 NY2d 30). Nevertheless, case law has recognized some rare and rigidly circumscribed expectations to the general rule. In Bender v New York City Health & Hosps. Corp. (38 NY2d 662, 668), a unanimous Court of Appeals held "our court has never specifically adopted the doctrine of estoppel in the notice of claim area. * * * We do so today.” In that case, a notice of claim (see, General Municipal Law § 50-e) was served upon the City of New York rather than the New York City Health and Hospitals Corporation, the proper defendant. The Court ruled that the conduct of the defendant in litigating the case without apprising the plaintiff of the defect could give rise to an *1010 estoppel, holding (supra, at 668): "where a governmental subdivision acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice, that subdivision should be estopped from asserting a right or defense which it otherwise could have raised.” (See also, Allen v Board of Educ., 168 AD2d 403, lv dismissed 77 NY2d 939; Young v Supervisor of Town of Lloyd, 159 AD2d 828, lv dismissed 76 NY2d 761; Matter of 1555 Boston Rd. Corp. v Finance Adm’r of City of N. Y., 61 AD2d 187; Eden v Board of Trustees, 49 AD2d 277, 284; Sysol Constr. Co. v State of New York, 92 Misc 2d 238, 241.)
In People v Thomas (47 NY2d 37), a criminal defendant had failed to file a notice of appeal within the statutory 30-day period, and had failed to move for an extension of that period until expiration of the one-year limitation for such a motion (CPL 460.30). Although the defendant was under the impression that his assigned counsel had filed the notice, the Court of Appeals faulted the District Attorney for, in effect, playing possum until the time in which to move for an extension had expired. The Court noted that the one-year limit set forth in the statute should be strictly construed since (supra, at 43): "the time limits within which appeals must be taken are jurisdictional in nature and courts lack inherent power to modify or extend them * * * Nevertheless, because the omissions on the part of the prosecutor, though no doubt made more critical by assigned counsel’s less than assiduous performance, frustrated the good faith exercise of the defendant’s right to the remedy of CPL 460.30, the People should be estopped from invoking the bar of the one-year limit”.[2]
These references to cases where estoppel has been invoked against a governmental entity indicate only that there are exceptions to the general prohibition against such a finding. Estoppel arguments are frequently rejected. For example, in *1011 Calco v State of New York (165 AD2d 117), a case with extraordinary parallels to the instant claim, claimant had served his notice of intention at the office of the Attorney-General at 120 Broadway, and the recipient of such service was none other than Milton Maliavsky, the protagonist of our current scenario.[3] The Third Department found that the record therein did not reflect "the kind of situation where estoppel is available * * * against a government” (supra, at 119). Nevertheless, there are two important distinctions between the facts of Calco and the record before me. First, the appellate Court in Calco noted "[significantly, there is no submission by claimant’s process server other than the affidavit of service” (supra, at 119), while in the instant claim, the claimant’s process server testified before me and was cross-examined by the defendant. The second significant distinction is that in Calco the time in which to make a late filing motion had not yet expired, and Judge Hanifin, in declining to apply an estoppel, invited claimant to make such an application. Notwithstanding the subsequent denial of the late filing application because of a failure to show merit to the claim, the availability of that remedy was certainly an important factor in determining whether claimant established his right to the extraordinary remedy of estoppel. The unavailability of late claim relief here is likewise significant.
In determining whether to sustain claimant’s estoppel contention, I must analyze the reasons for its general unavailability against governmental entities. In E.F.S. Ventures Corp. v Foster (71 NY2d 359), two reasons for the prohibition are articulated. The first, to protect the public against fraud, is implicated in situations that bear on protection of the public fisc (see, e.g., Board of Supervisors v Ellis, 59 NY 620, 625), and flows from the principle that governmental officials are agents who deal with funds belonging not to themselves but to the public. The second reason, based upon the principle of separation of powers, is illustrated in Foster where the Court rejected a developer’s argument that a Town Planning Board should be estopped from reconsidering its approval of a project, finding that "a judicial estoppel preventing [the Board] from implementing the statutory SEQRA [State Environmental Quality Review Act] requirements as they are required to *1012 do, would place the court in opposition to the elected branches of government and override legislative mandates establishing environmental review procedures” (71 NY2d 359, 370, supra). The Court noted that protection of the environment is one of the most important policy concerns of the State.
Applying these principles to the facts at bar, I find that this is one of the rare instances where estoppel should be applied against the State. As set forth in Bender v New York City Health & Hosps. Corp. (38 NY2d 662, supra), in order for estoppel to be applicable, it is necessary to show that the governmental unit in question comported itself wrongfully, that such conduct induced reliance by someone entitled to rely on it, and that the position of such party was changed by the reliance. Claimant has met his burden with respect to these three elements.
A person who proceeded to the Manhattan office of the Attorney-General with the intention of serving process in a Court of Claims action was confronted with a directory listing (reciting either "Service of Papers” or "Service of Process”, a distinction to which I attribute no relevance) advising him to go to a room set aside for that purpose. When the clerk manning the booth at that location was handed a document which was clearly labeled a "Notice of Intention” to file a claim in the "Court of Claims”, and asked if he could accept service, the clerk accepted the document and stamped the process server’s receipt. The Deputy Bureau Chief admitted that there had been problems relating to service of Court of Claims papers on unauthorized persons, yet nothing was done other than "reinforcing” instructions that had been ineffective in the first place. The simple expedient of placing a prominent sign in the booth advising those who had Court of Claims papers that such documents could only be accepted by an Assistant Attorney-General on the 25th floor was not followed. In the context of a statutory requirement that Court of Claims process be served upon an Assistant Attorney-General, I find that the continuing failure to effectively ameliorate the recognized problem, as well as Maliavsky’s actions in accepting service, amounted to misconduct.
Claimant’s reliance upon such misconduct, as well as his change in position from ostensibly possessing a timely instituted claim to a jurisdictionally defective one, requires no extended discussion. While one might question Kerstein’s failure to ask Maliavsky if he was an Assistant Attorney-General, and there is no question that such would have been *1013 better practice, that relatively slight omission should not vitiate the misconduct of the defendant. The Calco decision (165 AD2d 117, supra) should not be read to make that question into a talisman. Estoppel is an equitable remedy, and its applicability is to be determined after considering and balancing all of the facts. Here, the equities lie with the claimant, and I so find. Moreover, the factors which in some cases militate against the imposition of an estoppel against a governmental entity, as identified in E.F.S. Ventures Corp. v Foster (71 NY2d 359, supra), are not present herein.
Accordingly, defendant is estopped from challenging the validity of the December 3, 1987 service of the notice of intention. That being the case, the claim was interposed in a timely fashion, and the defendant’s motion to dismiss this claim is denied. In view of my determination, claimant’s second contention, relating to the issue of in personam versus subject matter jurisdiction, is moot.

. The relevant portion of section 11 has been contained in section 11 (a) since the 1990 amendment of section 11.

. There is a superficial similarity between Thomas (supra) and the instant claim. In the former, the prosecutor remained silent until the expiration of the CPL 460.30 period while here, the defendant remained silent until the expiration of the period in which claimant could have sought leave to file a late claim. There is nothing to suggest that defendant intentionally waited until the expiration of such period before making its dismissal motion. In any event, estoppel is not contemplated on the conduct of the Attorney-General during this litigation, but rather upon the conduct of Department of Law employeés on the date of service of the notice of intention. Thomas is cited merely as illustrative of one occasion where estoppel was applied against a governmental entity.

. Certain of the facts of Calco (supra) which do not appear in the appellate decision are taken from the memorandum decision and order of the Court of Claims filed November 20, 1989 (Hanifin, J., claim No. 78895, affd 165 AD2d 117).