OPINION OF THE COURT
Thomas A. Dickerson, J.
The petitioner, Chrislex Staffing Ltd., doing business as J & K Healthcare Services (Chrislex), filed the instant notice of *466 petition, dated October 16, 2002 (the petition), pursuant to CPLR article 78 for (1) a judgment declaring that the determinations of the respondent, the New York State Department of Health (the State), dated June 17, 2002 and August 27, 2002, denying Chrislex’s request for a waiver of the two-year claims submission requirement set forth in 18 NYCRR 540.6 (a) (3) (i) were arbitrary, capricious, an abuse of discretion and contrary to law, and (2) an order directing the State and its Commissioner, Antonia C. Novello (collectively the State), and the respondent, Westchester County and its Commissioner of the Department of Social Services, Kevin P. Mahon (collectively the County), to accept and process Chrislex’s claims for reimbursement for services provided to Rosemary Carlucci (Ms. Carlucci), a homebound and disabled resident of Westchester County, in accordance with law.
The Response
In response the County filed a notice of motion to dismiss (the County’s motion) on November 4, 2002 and the State filed State respondents’ verified answer (the State’s answer) on December 6, 2002. In reply Chrislex filed petitioner’s memorandum of law in opposition to the Westchester County respondents’ motion to dismiss, dated December 27, 2002, and petitioner’s memorandum of law in reply to the answer and responding affidavits of respondent New York State Department of Health dated January 7, 2003.
The Parties
Chrislex, licensed by the State as a home care service agency, is a qualified provider of home health care services including licensed practical nursing care. Under its contract with the County, renewed in 1997, Chrislex agreed to provide home health care services to Medicaid eligible persons in Westchester County. The respondent, Antonia C. Novello, Commissioner of the State’s Department of Health (DOH), is responsible for overseeing New York State’s Medicaid program. The respondent, Kevin P. Mahon, the Commissioner of the County’s Department of Social Services (DSS), is responsible for the administration of all the medical assistance and care for which the County is responsible under the Medicaid program. The State’s DOH, together with its fiscal agent, Computer Sciences Corporation (CSC), and the County DSS administer the Medicaid program within Westchester County.
*467 Rosemary Carlucci
In December 1997 Chrislex was contacted by the County’s DSS and requested to provide home health care services for Rosemary Carlucci.[1] Ms. Carlucci is the daughter of Nicholas Carlucci, a retired former employee of the County, both of whom are beneficiaries[2] of the Westchester County Health Benefit Plan (the County’s Plan). Ms. Carlucci is also a disabled person having been “diagnosed with, inter alia, profound mental retardation, cerebral palsy, seizure disorder and epilepsy and because of medical conditions requires daily nursing care and attention.”[3] Ms. Carlucci’s Medicaid eligibility began on February 1, 1989[4] and she has been receiving home health care services paid for by Medicaid prior to 1997.[5]
[6]At the time Chrislex was asked to provide home health care services the County DSS represented that Ms. Carlucci had been approved by Medicaid and that Chrislex would be reimbursed through Medicaid.®
Services Rendered But Only Some Claims Paid
From April 1998 through June 1999 Chrislex provided home health care services to Ms. Carlucci (for a detailed statement of services rendered and claims filed see petition, exhibit A, Nov. 13, 2001 letter of Anthony Lettieri). Chrislex relied upon the County’s representation of Ms. Carlucci’s Medicaid coverage and instead of, initially, inquiring as to availability of third-party insurance coverage (18 NYCRR 540.6 [e] [1] [“As a condition of payment, all providers of medical assistance must take reasonable measures to ascertain the legal liability of third parties to pay for medical care and services”]), such as the *468 County’s Plan of which Ms. Carlucci is a beneficiary,[7] submitted its claims, within 90 days of providing services,[8] to the State through CSC, for reimbursement under Medicaid. The State paid Chrislex $6,600 for 37 claims under Medicaid for services rendered on various dates to Ms. Carlucci during the period September 15, 1998 through December 31, 1998.[9]
Additional Claims Denied: The Wild Goose Chase
The State then denied the balance[10] of the Carlucci claims and erroneously informed Chrislex that Ms. Carlucci was covered by “other insurance,” the County’s Plan, and instructed Chrislex to bill the “other carrier.” On November 13, 2000, Chrislex, relying upon the State’s erroneously based instructions, submitted the balance of the Carlucci claims for reimbursement to POMCO, the administrator of the County’s Plan. On December 20, 2001, after an inexcusable delay of 13 months, POMCO rejected Chrislex’s claims because of a lack of coverage.[11]
In essence, Chrislex was sent on a wild goose chase because the State, after paying some of the Carlucci claims under Medicaid, erroneously determined that Ms. Carlucci had coverage under the County’s Plan when, in fact, she did not. In addition, Chrislex notified the County on June 10, 1999[12] of the State’s erroneous determination. It is fair to conclude that from June 10, 1999 onward the County knew or should have known of the County’s Plan’s lack of coverage of the Carlucci claims and should have informed Chrislex and the State of the State’s patently erroneous determination. Unfortunately, the County compounded the State’s erroneous determination by failing to correct this error and by encouraging Chrislex to submit its claims to POMCO and then wait an inexcusable 13 months to determine the obvious, i.e., that the Carlucci claims were not covered by the County’s Plan.
*469 The Claims Are Now Time-Barred
Chrislex resubmitted its claims on May 17, 2002 to the State for reimbursement through Medicaid. Chrislex learned, however, that although the Carlucci claims were “now” covered by Medicaid, the State still refused to reimburse Chrislex. Because of delays caused by the State and the County the Carlucci claims were now time-barred by the two-year claims submission requirement in 18 NYCRR 540.6 (a) (3) (i). The County advised[13] Chrislex that it had to obtain a waiver[14] from the State in order for the County DSS to process its claims.
Waivers Requested and Denied
Although the papers are not clear as to the specific date, it appears that even before receiving POMCO’s December 20, 2001 rejection letter, Chrislex requested a waiver from the State’s Bureau of Medical Review and Payment (the Bureau). On December 7, 2001, the Bureau notified Chrislex that its request for a waiver was denied[15] due to “provider internal problems,” “claim form completion errors originating with the provider,” “failure to provide agency error” and “files show recipient having — other insurance with POMCO since 2/1/81. Responsible party for payment should have supplied the appropriate information for all health insurance information.” Chrislex’s second request for a waiver was rejected on June 17, 2002[16] this time for “Late determinations from * * * 3rd Party Insurers” and “Failure to provide evidence of agency error.” Finally, on July 5, 2002, Chrislex filed a notice of appeal[17] regarding the Bureau’s December 7, 2001 and June 17, 2002 waiver denials. On August 27, 2002, the appeal was denied for *470 “late determinations from * * * third Party Insurers” and “failure to provide evidence of agency error.”[18]
Having exhausted all remedies available with the State and the County Chrislex filed the article 78 petition presently before this court in October 2002.
Discussion
It is clear that Chrislex timely filed its claims with the State through CSC, within 90 days of service, that some of those claims were paid but most were not because the State erroneously determined that the County’s Plan provided coverage when, in fact, it did not. By the time the County through POMCO discovered 13 months later that there was no coverage, the balance of the Carlucci claims were time-barred.
The relevant statute, 18 NYCRR 540.6 (a) (3) (i), states “[A] 11 claims for payments for medical care, services or supplies furnished by non-public providers under the medical assistance program must be finally submitted to the department or its fiscal agent and be payable within two years from the date the care, services or supplies were furnished in order to be valid and enforceable as against the department or a social services district.”
It is the policy of the State, however, to allow a claim to be submitted after two years “When the provider demonstrates that social services district [the County DSS] or Department [the State DOH] error caused the provider to be unable to submit a payable claim within two years of the service date.”[19]
The State denied Chrislex’s two requests for a waiver and its appeal because it failed to provide any evidence of error on the part of the County or the State. In addition, the appeal was denied because of “late determinations [of coverage]” of the County’s Plan by the County through POMCO.
The Four Errors
The errors of the State and the County in mishandling the Carlucci claims consist of the following negligent misrepresentations, omissions in failing to reveal material facts which were known or should have been known and negligent and unconscionable delays in processing claims and determining insurance coverage.
First, when the County asked Chrislex to provide services to Ms. Carlucci, the County represented that she was Medicaid *471 eligible and that Medicaid would pay for these services. Chrislex relied upon the County’s representation and billed the State without seeking to discover the availability of coverage under the County’s Plan, which, in fact, did not provide coverage. If Chrislex had known sooner of the County’s Plan’s lack of coverage it could have immediately corrected the State’s later erroneous determination that the Carlucci claims were covered by the County’s Plan.
Second, the State, after paying some of the Carlucci claims, refused to pay any additional claims because it erroneously, and even negligently, determined that the County’s Plan provided coverage. Chrislex relied upon the State’s erroneous determination and instead of challenging it in court, if necessary, assumed it was made in good faith and was accurate.
Third, when Chrislex informed the County of the State’s determination the County should have known that it was erroneous since it is the County’s Plan. In fact, a reading of the Westchester County Health Benefits Plan Booklet, Section VII Plan Exclusions (at 62, No. 24) reveals that services related to custodial care are an exclusion and are not covered by the County’s Plan.[20] The County should have advised both Chrislex and the State of the County’s Plan’s lack of coverage.
Fourth, the County’s and POMCO’s 13-month delay in discovering that the County’s Plan did not provide coverage was inexcusable and unconscionable. This error alone guaranteed that the balance of the Carlucci claims could not be resubmitted to the State until after the two-year claims submission requirement.
Doctrine of Equitable Estoppel
The doctrine of equitable estoppel is a principle that is applied in the interest of fairness to preclude a party from speaking against his own acts, commitments or representations which induced another, who reasonably relied on such words or conduct and who would suffer injury if such conduct or representations which induced another, who reasonably relied on such words or conduct or representations, were allowed to stand (28 Am Jur 2d, Estoppel and Waiver § 28).
In Bender v New York City Health & Hosps. Corp. (38 NY2d 662 [1976]), the petitioners raised the issue of whether or not the New York City Health and Hospitals Corporation should be estopped from asserting the affirmative defense of the *472 claimant’s failure to file a timely notice of claim. In Bender, the petitioners in a medical malpractice action filed a notice of claim with the City of New York but they failed to file a notice of claim with the New York City Health and Hospitals Corporation. Pursuant to a new statutory scheme, it became necessary for a party sustaining injury, allegedly attributable to the New York City Health and Hospitals Corporation, to file a verified notice of claim with the corporation prior to the commencement of the lawsuit. However, when the Corporation Counsel and the attorney for the New York City Health and Hospitals Corporation learned of the claim, they noticed a hearing and physical examination, but did not inform the petitioners that their notice had been filed with the wrong agency or that notice should have been served on the New York City Health and Hospitals Corporation. Petitioners subsequently served the complaint on the corporation, and the corporation relied on the affirmative defense of a failure to comply with the notice of claim provision. In striking the affirmative defense the Court of Appeals held:
“We believe that where a governmental subdivision acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice, that subdivision should be estopped from asserting a right or defense which it otherwise would have raised. The equitable bar to a defense may arise by virtue of positive acts, or omissions where there was a duty to act.” (At 668 [citations omitted].)
The doctrine of equitable estoppel has been applied by other courts, particularly, to discretionary governmental functions similar to the State’s claims submission requirement waiver procedure at issue herein. These courts have sought to prevent injustice and to insure that claim filing requirement statutes “do not become ‘a trap to catch the unwary or the ignorant’ ” (Bender, supra at 668; see e.g., Conquest Cleaning Corp. v New York City School Constr. Auth., 279 AD2d 546, 547 [2d Dept 2001] [defendant’s affirmative acts “lulled the plaintiff into sleeping on its rights to its detriment and therefore * * * the doctrine of estoppel (was applied preventing the assertion of a 90 day claim filing requirement)”]; Smith v Sagistano, 186 AD2d 180 [2d Dept 1992] [school district would be estopped from asserting notice of claim defense if its affirmative conduct induced other side to delay filing notice of claim]; Allen v Board *473 of Educ., 168 AD2d 403 [2d Dept 1990] [board of education may be estopped from reducing contributions to health insurance plan based upon misrepresentations of its commitment to make lifetime contributions]; Doctors Council v New York City Employees’ Retirement Sys., 127 AD2d 380, 394 [1st Dept 1987] [“defendants may be estopped from exercising their discretion to exclude part-time employees from NYCERS membership if the plaintiff doctors relied * * * upon express assurances or a practice * * * of extending NYCERS membership eligibility to part-time and sessional doctors”]; Chait v Town of Thompson, 105 AD2d 578, 579 [3d Dept 1984] [late filing of notice of claim regarding improper sale of land to pay unpaid taxes; “Defendants contend a lack of vigilance on the part of plaintiff; however, that characterization more appropriately applies to defendants. By their acts and omissions, defendants caused plaintiff to believe that her tax payments were current”]; Fryczynski v Niagara Frontier Transp. Auth., 116 AD2d 979, 980 [4th Dept 1986] [failing to correct misconception allowed defendant to obtain “an unfair advantage * * * by misleading plaintiff into allowing the statute to run”]; Brennan v New York City Hous. Auth., 72 AD2d 410 [1st Dept 1980] [Housing Authority estopped from requiring out-of-state officers to relocate]; Francis v State of New York, 155 Misc 2d 1006, 1012 [1992] [estoppel applied when State Attorney General’s office failed to properly advise claimants where to file Court of Claims papers; “Claimant’s reliance upon such misconduct, as well as his change in position from ostensibly possessing a timely instituted claim to a jurisdictionally defective one, requires no extended discussion”]).
Respondents, after all, do not dispute that Chrislex provided Ms. Carlucci with valuable home health care services which she needed and to which she was entitled. Through the provision of such services, Chrislex has fulfilled its contractual obligations and has enabled the State and the County to discharge their respective statutory duties and obligations. The specific facts of this case demand that it is just, fair and equitable for Chrislex to now be fully compensated for its services. The State and the County are equitably estopped from denying Chrislex’s request for a waiver of the two-year claims submission requirement set forth in 18 NYCRR 540.6 (a) (3) (i).
Four-Month Statute of Limitations
Concerning the commencement of article 78 proceedings, CPLR 217 (1) provides in pertinent part: “Unless a shorter *474 time is provided in the law authorizing the proceeding, a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner.”
The State argues that the “determination to be reviewed” became final and binding on or about December 12, 2001, the date that Chrislex was notified that its first request for a waiver of the two-year claim filing requirement was denied. The County, on the other hand, asserts that the “determination to be reviewed” date triggering the four-month statute of limitations was April 9, 1999, the date that Chrislex received notice that the balance of the Carlucci claims were denied because of the availability of “other insurance.” The court finds, however, that the date the “determination to be reviewed” became final and binding upon the petitioner was August 27, 2002, the date Chrislex’s appeal was denied. At that point, Chrislex had exhausted all administrative remedies and the only recourse was the instant article 78 proceeding which was clearly filed within the four-month statutory period.
Accordingly, the motion to dismiss of the respondent, Westchester County, is denied, and petitioner’s article 78 petition is granted to the extent that the respondent, the State, through the Bureau, is ordered to grant a waiver of the two-year claims submission requirement set forth in 18 NYCRR 540.6 (a) (3) (i), and the State and the County are directed to accept and process the remainder of petitioner’s claims for reimbursement for services provided to Rosemary Carlucci.

. Petition para 19.

. Petition paras 25-26.

. Petition para 16.

. State’s answer para 17 (“upon information and belief, Rosemary Carlucci’s Medicaid eligibility began on February 1, 1989”).

. Petition para 18 (“On information and belief, prior to December 1997, Rosemary Carlucci has been receiving Home Health Care Services from a home care service agency other than [Chrislex] and such services were paid for by Medicaid”).

. Petition para 19 (“[the County] initially contacted Chrislex in or around December 1997 * * * and stated that Ms. Carlucci had been approved for Medicaid, and that [Chrislex] would be reimbursed through Medicaid for the Home Health Care Services provided”).

. This would have been a futile effort since the County’s Plan did not provide coverage for the Carlucci claims.

. Petition para 21.

. Fitzsimmons affidavit paras 28, 33.

. It is not clear how much Chrislex is owed for the balance of the Carlucci claims. Chrislex claims $33,984 or $34,400 (see petition, exhibit A, Nov. 13, 2001 letter of Anthony Lettieri). The State asserts in the Fitzsimmons affidavit (paras 33-36) that it paid Chrislex $6,600 for 37 timely filed claims and refused to pay additional claims totaling $7,000.

. Petition, exhibit A, letter from POMCO, dated Dec. 20, 2001.

. Affidavit of James F. Heuberger, sworn to Oct. 31, 2002 (Heuberger affidavit), paras 10-12.

. Petition paras 34-37.

. Fitzsimmons affidavit para 13 (“In some cases, a provider may be unable to submit a payable claim within two years of the service date due to circumstances outside its control. The Department has promulgated a waiver procedure under which providers may be granted a waiver of the two year billing rule * * * [w]hen the provider demonstrates that social services district [Westchester County Department of Social Services] or Department [New York State Department of Health] error caused the provider to be unable to submit a payable claim within two years of the service date”).

. Fitzsimmons affidavit, exhibit D.

. Fitzsimmons affidavit, exhibit E.

. Petition, paras 36-40, exhibit A, notice of appeal, dated July 5, 2002; Fitzsimmons affidavit, paras 22-23, exhibit F.

. Fitzsimmons affidavit, exhibit F.

. Fitzsimmons affidavit para 13.

. Petition, exhibit A, Dec. 20, 2001 letter of Michele Tanner.