## STATE OF CONNECTICUT *v.* MARK REID
## (SC 17554)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.[*]

---

[*] The listings of justices reflects their seniority status on this court as of the date of oral argument.

Argued January 6—officially released April 18, 2006

*Robert J. Gallo*, with whom, on the brief, were *Karen A. Goodrow*, public defender, *Charles D. Ray* and *Salvatore N. Fornaciari*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's

attorney, and *Cynthia Baer*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The defendant, Mark Reid, appeals from the judgment of conviction of assault in the second degree, challenging the decision of the trial court denying his motion to withdraw his guilty plea. The principal issue in this appeal is whether, at the time he entered his plea, the defendant adequately was apprised of the nature of the criminal charges against him in conformity with the federal constitutional requirement that a guilty plea, to be valid, must be made knowingly and voluntarily. We answer the question in the affirmative, and accordingly, we affirm the judgment of conviction.

The record reveals the following facts and procedural history. In June, 1996, the state charged the defendant in a short form information with one count of assault in the first degree in violation of General Statutes § 53a-59.[1] In September, 1996, the defendant pleaded not guilty and elected a trial by jury.[2] On April 25, 1997, the state filed a substitute short form information charging the defendant with one count of assault in the second

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[2] The trial court granted two continuances between the time the state filed the first information and the defendant entered his plea of not guilty. The trial court thereafter granted four additional continuances between the defendant's entry of his plea of not guilty to first degree assault and his subsequent plea of guilty to a lesser charged crime. The reason and purpose for these continuances were not recorded appropriately and, thus, the record contains no indication as to their origin or justification.

degree in violation of General Statutes § 53a-60.[3] That same day, the defendant entered a guilty plea to the substitute information.

During the hearing at which the defendant entered his guilty plea, defense counsel began by representing to the trial court, *Cofield, J.*, that he had "explained to [the defendant] the offer that the court extended. [He has] indicated to me that he is going to be accepting the offer . . . ." The state then requested that the defendant enter his plea to "a substituted charge of assault in the second degree, a violation of [General Statutes §] 53a-61 . . . ."[4] Notably, for purposes of this appeal, § 53a-61 addresses *third* degree assault, not second degree assault, and we further discuss this inconsistency in part II of this opinion.

The assistant state's attorney thereafter recited to the court the following facts underlying the assault charge. The victim, Roosevelt Joyner, reported to the police that the defendant had approached him, confronted him verbally, and then hit him several times with a metal baseball bat on his left hand and forearm, on the left side of his head and on his left leg. As a result of this attack, the victim suffered several injuries including a broken leg. An eyewitness corroborated the

---

[3] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

[4] General Statutes § 53a-61 (a) provides: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon."

victim's version of events. The defendant confirmed that he had heard the recitation of facts and that the facts were correct. When the trial court asked the defendant if he had "caused [the victim] a serious physical injury, [a] broken leg . . . and . . . did that by using a baseball bat," he acknowledged that he had.

The defendant also responded affirmatively to the trial court's questions as to whether he had had enough time to discuss the plea with defense counsel and whether he was satisfied with the advice given to him. He also indicated that he did not have any further questions for defense counsel concerning the law or the facts applying to his case. Additionally, the defendant affirmed that defense counsel "went over the law with [him], as it relates to assault in the second degree . . . ." The defendant then affirmed that he had waived a presentence investigation as well as his rights to a trial, to confront witnesses and to avoid self-incrimination. In response to a query from the trial court, defense counsel stated that he had informed the defendant that credit likely would not be given for the time he had served on charges pending in another matter.[5]

---

[5] In November, 1996, while the assault charge at issue in this court was pending, the defendant was charged with kidnapping in the first degree and sexual assault in the first degree. At the trial on those charges, the defendant presented a misidentification defense while the state presented, inter alia, expert testimony concluding, after examination under a microscope, that pubic hairs found on the complainant's clothing were "Negroid" and had "similar characteristics" to the defendant's hair. See *Reid* v. *State*, Superior Court, judicial district of Hartford, Docket No. CV 02 0818851 (May 14, 2003) (discussion of defendant's criminal procedural history set forth in memorandum of decision granting defendant's petition for new trial). In November, 1997, the defendant was convicted of both crimes and sentenced to eighteen years imprisonment. Five years later, upon the defendant's motion, the hairs were submitted for a DNA test that was not available at the time of his trial. Id. The defendant's conviction was vacated based upon the results of that test, which excluded the defendant as a contributor of the hairs and, instead, showed that it was likely that the hairs belonged to the Caucasian complainant. Id. The charges eventually were dismissed, and the defendant was released after serving approximately six years of his prison sentence.

Upon learning that the defendant is not a citizen of the United States, the trial court explained to the defendant that he was pleading guilty to a felony and that, "as a result of [his] plea [he] could face other consequences, such as deportation . . . from the United States, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." The defendant affirmed that he understood these possible consequences and further confirmed that he still wished to enter the guilty plea.

The defendant also affirmed that he was entering a plea of guilty "because [he was] guilty and for no other reason." Finally, he confirmed his understanding that he would not be able to "take back" the plea once it had been accepted by the trial court and that, as instructed by the court, the "maximum penalty on the charge of assault in the second degree is five years . . . ." Pursuant to the plea agreement, the trial court then imposed a sentence of one year incarceration.[6]

In November, 1997, a jury found the defendant guilty of sexual assault in the first degree and kidnapping in the first degree. See footnote 5 of this opinion. In 1999, deportation proceedings were commenced against the defendant by the federal government citing the defendant's 1997 sexual assault conviction as the basis for deportation.[7] In May, 2003, the trial court granted the

---

[6] At the time of the assault, the defendant was on probation as a result of a 1995 conviction for criminal mischief in the third degree. As part of the plea agreement presently before this court, the trial court sentenced the defendant to six months as a result of the probation violation, to run concurrently with the sentence imposed for assault.

[7] Section 1227 (a) (2) (A) (iii) of title 8 of the United States Code, a provision of the Immigration and Nationality Act, provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

We note that the June, 1999 "Notice to Appear" in the deportation proceedings incorrectly refers to the date of the defendant's sexual assault conviction as February 20, 1998. That inconsistency is not relevant to this appeal.

defendant's petition for a new trial and vacated that 1997 conviction. In June, 2003, the federal Department of Homeland Security substituted the defendant's April, 1997 conviction of assault in the second degree for the now vacated November, 1997 conviction that previously had been cited as the basis for deporting him. In August, 2003, the United States Immigration Court denied the defendant's motion to terminate the deportation proceedings. The defendant was ordered deported to Jamaica, and he thereafter was removed from the United States.

In February, 2004, pursuant to Practice Book §§ 39-26, 39-27 and 39-19, the defendant filed in the Superior Court a motion to withdraw his plea of guilty to assault in the second degree, claiming violations of his right to due process under the fifth and fourteenth amendments to the United States constitution and under article first, § 8, of the Connecticut constitution.[8] The defendant claimed that his plea was improper because the trial court never had advised him of the elements of the crime for which he was convicted, nor did the record of the proceedings demonstrate that the defendant's attorney had advised him of the necessary elements. The defendant also claimed that his attorney's representation may have been ineffective and that he was denied his right to allocution.

The trial court, *Swords, J.*, noted that the defendant's motion to withdraw the plea was untimely, but concluded that, because the defendant had asserted constitutional claims that could be reviewed, it would consider the motion. The court entered an order denying the motion, however, reasoning that the defendant

---

[8] In September, 2003, the defendant also filed, pursuant to Practice Book § 43-22, a motion to correct his sentence. The defendant claimed therein that the record was ambiguous as to whether he was convicted of assault in the second degree pursuant to § 53a-60 or assault in the third degree pursuant to § 53a-61. The trial court denied that motion.

had not demonstrated a clear constitutional violation, nor had he demonstrated a clear deprivation of his right to a fair hearing. This appeal followed.[9]

On appeal to this court, the defendant contends that the trial court's judgment was improper because: (1) the canvass of the defendant was ambiguous as to whether he was pleading to second or third degree assault and as to which particular subsections of the relevant offense applied; (2) there is no support in the record to conclude that the necessary information had been provided by defense counsel prior to the plea; and (3) the failure of defense counsel to correct these deficiencies, combined with the multiple continuances of the proceedings, raises serious questions as to the adequacy of representation received by the defendant and therefore about whether his plea was knowing and voluntary.[10] The state contends that the defendant's appeal must be dismissed because the trial court lacked jurisdiction in the first instance to consider the plaintiff's motion to withdraw his plea. Alternatively, the state contends that, should we examine the plea canvass, we should deny the appeal nonetheless because the defendant has not demonstrated that his plea was

---

[9] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[10] We analyze the defendant's due process arguments under the requirements of the United States constitution. Although in his brief to this court the defendant claims that his plea violated the due process clause under the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution, we decline to reach the defendant's state constitutional claim because it does not meet the standard we enunciated in *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992). "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Pierre*, 277 Conn. 42, 74 n.12, 890 A.2d 474 (2006).

constitutionally infirm. We conclude that the trial court lacked jurisdiction to consider the defendant's motion to withdraw his plea, but that we nevertheless may review his constitutional claim that his plea was not given knowingly and voluntarily. We agree with the state, however, that the defendant has not met his burden as to this claim and, accordingly, we affirm his judgment of conviction.

I

The first issue that we must address is whether this court has jurisdiction to consider the merits of the defendant's challenge to his guilty plea within the confines of our authority to review the trial court's judgment denying his motion to withdraw the plea. If we conclude that the motion to withdraw was an inappropriate vehicle for the defendant's challenge and, therefore, that the trial court lacked jurisdiction to entertain the motion, the question arises whether any other avenue of appellate review is appropriate in the particular circumstances of this case.

The matter presently before us arises out of the defendant's motion to withdraw his guilty plea pursuant to Practice Book §§ 39-26[11] and 39-27.[12] The state contends

[11] Practice Book § 39-26 provides: "A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in Section 39-27. *A defendant may not withdraw* his or her plea *after the conclusion of the proceeding at which the sentence was imposed.*" (Emphasis added.)

[12] Practice Book § 39-27 sets forth the following grounds on which the defendant may withdraw his or her plea of guilty after acceptance: "(1) The plea was accepted without substantial compliance with [Practice Book §] 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

that the trial court acted without jurisdiction when it heard and determined the defendant's motion because, in the absence of a legislative or constitutional grant of continuing jurisdiction, the trial court lost jurisdiction over this action on April 25, 1997, when the defendant was taken in execution of his sentence and transferred to the custody of the commissioner of correction. We agree.

It is axiomatic that jurisdiction "involves the power in a court to hear and determine the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created." *Connecticut State Employees Assn., Inc.* v. *Connecticut Personnel Policy Board*, 165 Conn. 448, 456, 334 A.2d 909 (1973). "Article fifth, § 1 of the Connecticut constitution proclaims that [t]he powers and jurisdiction of the courts shall be defined by law, and General Statutes § 51-164s provides that [t]he superior court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute." (Internal quotation marks omitted.) *State* v. *Carey*, 222 Conn. 299, 305, 610 A.2d 1147 (1992), on appeal after remand, 228 Conn. 487, 636 A.2d 840 (1994). "The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. . . . It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment *before* the sentence has been executed." (Citations omitted; emphasis added.) *State* v. *Luzietti*, 230 Conn. 427, 431–32, 646 A.2d 85 (1994).

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

"In a criminal case the imposition of sentence is the judgment of the court. . . . When the sentence is put into effect and the prisoner is taken in execution, custody is transferred from the court to the custodian of the penal institution. At this point jurisdiction of the court over the prisoner terminates." (Citation omitted; internal quotation marks omitted.) *State* v. *Walzer*, 208 Conn. 420, 424–25, 545 A.2d 559 (1988); accord *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 37, 779 A.2d 80 (2001) ("[t]his court has held that the jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act"). For example, this court has held that a trial court lacked jurisdiction to grant a defendant's motion for judgment of acquittal, alleging insufficient evidence, filed six weeks after he had begun serving his sentence because the court "loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence."[13] *State* v. *Luzietti*, supra, 230 Conn. 432.

Turning to the matter presently before this court, we note that, at the time he filed the motion to withdraw his plea, the defendant not only had begun serving his sentence, he had completed it and had been released. The defendant does not claim to act under a legislative

[13] We note that there are a limited number of circumstances in which the legislature expressly has conferred on the trial courts "continuing jurisdiction to act on their judgments after the commencement of sentence . . . . See, e.g., General Statutes §§ 53a-29 through 53a-34 (permitting the trial court to modify terms of probation after sentence is imposed); General Statutes § 52-270 (granting jurisdiction to trial court to hear a petition for a new trial after execution of original sentence has commenced); General Statutes § 53a-39 (allowing the trial court to modify sentences of less than three years provided a hearing is held and good cause shown)." (Internal quotation marks omitted.) *State* v. *Boulier*, 49 Conn. App. 702, 705, 716 A.2d 134 (1998). The defendant, however, does not claim that the circumstances of those continuing jurisdiction cases are apposite to the present case.

grant of continuing jurisdiction; see footnote 13 of this opinion; and, indeed, brings his motion to withdraw pursuant to Practice Book § 39-26, which specifically provides that a defendant "may not withdraw his . . . plea after the conclusion of the proceeding at which the sentence was imposed."[14] We, therefore, agree with the state that the trial court lacked jurisdiction to hear and determine the defendant's motion to withdraw.

Under well established law, it is clear that the trial court's lack of subject matter jurisdiction to hear the motion to withdraw rendered void its denial of that motion. See *Commissioner of Transportation* v. *Rocky Mountain, LLC,* 277 Conn. 696, 725, 894 A.2d 259 (2006); see also 1 A. Freeman, Judgments (5th Ed. 1925) § 322, pp. 643–44 ("A judgment void upon its face and requiring only an inspection of the record to demonstrate its invalidity is a mere nullity, in legal effect no judgment at all, conferring no right and affording no justification. . . . It neither binds nor bars anyone. All acts performed under it and all claims flowing out of it are void.").

---

[14] The defendant contends that Practice Book § 39-26 does not affect this court's jurisdiction. We agree. "Practice Book rules do not ordinarily define subject matter jurisdiction. General Statutes § 51-14 (a) authorizes the judges of the Superior Court to promulgate rules regulating pleading, practice and procedure in judicial proceedings. . . . Such rules shall not abridge, enlarge or modify any substantive right nor the jurisdiction of any of the courts." (Internal quotation marks omitted.) *State* v. *Carey,* supra, 222 Conn. 307. "Even if a . . . Practice Book rule must be strictly construed and is mandatory, compliance with its requirements does not necessarily become a prerequisite to a court's subject matter jurisdiction." Id., 310; see also *State* v. *Myers,* 242 Conn. 125, 139 n.17, 698 A.2d 823 (1997) (although motion for new trial was not filed within time permitted by rule of practice, state waived timeliness claim by not objecting to motion when filed); *LoSacco* v. *Young,* 210 Conn. 503, 508, 555 A.2d 986 (1989) (because rule of practice is not constitutional or statutory mandate, it cannot be jurisdictional). Here, Practice Book § 39-26 merely recognizes the general or common-law grant of jurisdiction, regulates the procedure by which that jurisdiction may be invoked, and acknowledges that, absent a legislative grant, jurisdiction does not continue indefinitely, once invoked, but, rather, terminates with the conclusion of the proceeding at which the sentence is imposed.

The question that remains, however, is whether there is any other jurisdictional basis for this court to consider the constitutional challenges that the defendant has raised.[15] As the state repeatedly has conceded, the defendant's claim regarding his plea could have been brought properly on direct appeal from the trial court's April, 1997 judgment of conviction. Our rules of practice, however, provide that such appeals "must be filed within twenty days of the date notice of the judgment or decision is given"; Practice Book § 63-1 (a); and, "[i]n criminal cases where the appeal is from a judgment of conviction, the appeal period shall begin when sentence is pronounced in open court." Practice Book § 63-1 (b). It is undisputed that the defendant did not file such a direct appeal in the prescribed period. Nonetheless, we have "recognized that [w]here an appeal properly lies, but there has been a failure to follow the requirements of the statutes or rules, the appeal is ordinarily not void, but voidable . . . . [We have] said broadly that defects in the method of taking an appeal do not go to the jurisdiction of the court, and . . . [to] hold otherwise would be to exalt technicalities above substance. Examples of defects of this kind are . . . [t]he failure to take an appeal or file a writ of error within the proper time . . . ." *LaReau* v. *Reincke*, 158 Conn. 486, 493–94, 264 A.2d 576 (1969), quoting W. Maltbie, Connecticut Appel-

---

[15] We do not intend to suggest that we are retreating from our well settled law that, in order to obtain appellate review of a claim that a plea was not knowing, voluntary, or intelligent, it is encumbent on the defendant to raise the claim before the trial court by moving to withdraw the plea in accordance with Practice Book §§ 39-26 and 39-27. See *State* v. *Commins*, 276 Conn. 503, 514, 886 A.2d 824 (2005). The failure to do so, however, need not be fatal to review when constitutional claims are at issue and the record is adequate for review. See, e.g., *State* v. *Williams*, 60 Conn. App. 575, 578–79, 760 A.2d 948 (concluding that, despite defendant's failure to preserve claim by filing timely motion to withdraw, claim nevertheless is reviewable because it asserts violation of fundamental constitutional right; defendant failed to demonstrate constitutional violation occurred), cert. denied, 255 Conn. 922, 763 A.2d 1043 (2000); see also *State* v. *Childree*, 189 Conn. 114, 119, 454 A.2d 1274 (1983) (same).

late Procedure (2d Ed. 1957) § 275, p. 352." (Internal quotation marks omitted.) *Banks* v. *Thomas*, 241 Conn. 569, 586 n.18, 698 A.2d 268 (1997). Thus, this court would have jurisdiction to consider an untimely appeal by the defendant.

We are convinced that, under the unique circumstances of this case, it is appropriate for us to exercise our supervisory powers pursuant to Practice Book § 60-2 and treat the defendant's appeal as though he had filed a request for permission to file an untimely appeal from his judgment of conviction.[16] See, e.g., *State* v. *Ayala*, 222 Conn. 331, 342, 610 A.2d 1162 (1992). We recognize that "[c]onstitutional, statutory and procedural limitations are generally adequate to protect the rights of the defendant and the integrity of the judicial system. Our supervisory powers are invoked only in the rare circumstance where these traditional protections are inadequate to ensure the fair and just administration of the courts." *State* v. *Hines*, 243 Conn. 796, 815, 709 A.2d 522 (1998).

These are such rare circumstances. The defendant's conviction resulting from his April, 1997 guilty plea, which is claimed to be constitutionally unsound, was substituted by the Department of Homeland Security as the basis for his deportation in June, 2003, only after a November, 1997 conviction for another offense had been vacated in May, 2003, as a result of DNA testing. See footnotes 5 and 7 of this opinion. Since the November, 1997 conviction was vacated and the April, 1997

---

[16] Practice Book § 60-2 provides in relevant part: "The supervision and control of the proceedings on appeal shall be in the court having appellate jurisdiction from the time the appeal is filed, or earlier, if appropriate, and, except as otherwise provided in these rules, any motion the purpose of which is to complete or perfect the trial court record for presentation on appeal shall be made to the court in which the appeal is pending. The court may, on its own motion or upon motion of any party, modify or vacate any order made by the trial court, or a judge thereof, in relation to the prosecution of the appeal. . . ."

conviction was substituted as a basis for his deportation, thereby giving him the impetus for the first time to challenge his second degree assault conviction, the defendant consistently has sought review of that conviction in federal and state court. In August, 2003, the defendant filed a motion to terminate the deportation proceedings with the United States Immigration Court. In September, 2003, he filed a motion to correct the sentence resulting from the plea he presently challenges. Finally, in February, 2004, the month after he was deported, he filed the motion to withdraw his plea that is at issue in this appeal.[17] In light of these unique circumstances, we conclude that the procedural posture should not preclude consideration of the defendant's constitutional claim.

We, therefore, treat the defendant's claim as if a motion to file an untimely appeal had been made and granted, and an appeal from the April, 1997 judgment of conviction of assault in the second degree was filed pursuant to General Statutes § 52-263. Therefore, the merits of the defendant's challenge to his April, 1997 plea of guilty are properly before this court.

II

We now turn, therefore, to the defendant's claim that, at the time he entered his guilty plea, he was not apprised adequately of the nature of the criminal charges against him in conformity with the federal constitutional requirement that a guilty plea, to be valid, must be made knowingly and voluntarily. Specifically, the defendant claims that (1) he was not advised of the elements of the offense to which he was pleading guilty, (2) under the circumstances of his plea, it is improper to assume that his plea was knowing, and (3) in light of

---

[17] The defendant cannot bring an action for state habeas corpus relief because he is no longer in the custody of the government. See, e.g., *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 530–31, 876 A.2d 1178 (2005).

defense counsel's failure to correct the plea deficiencies and his acquiescence to multiple continuances, we should not presume that defense counsel cured these constitutional defects. The state contends that a trial court is not obligated constitutionally to inform a defendant on the record of the elements of the charges against him, or of the subsections under which he is charged, in order to demonstrate that the plea is voluntary and knowing. The state further contends that there is nothing in the record that demonstrates either ineffective assistance of counsel or ambiguity as to the charge to which the defendant pleaded. We agree with the state.

We begin by reviewing the law governing guilty pleas. "[A] voluntary and intelligent guilty plea operates as a waiver of all nonjurisdictional defects." *State* v. *Johnson*, 253 Conn. 1, 42, 751 A.2d 298 (2000). Moreover, "[i]t is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. . . . The . . . constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book §§ [39-19 and 39-20]. . . . The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." (Internal quotation marks omitted.) *State* v. *Greene*, 274 Conn. 134, 143–44, 874 A.2d 750 (2005).

In *State* v. *Commins*, 276 Conn. 503, 515, 886 A.2d 824 (2005), we recognized that "this court previously has reviewed unpreserved claims [challenging the constitutionality of a guilty plea]. See *State* v. *Childree*, [189 Conn. 114, 119, 454 A.2d 1274 (1983)] (reviewing

defective plea claim under *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 [1973]). It is well established, however, that parties must affirmatively seek to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine and bear the burden of establishing that they are entitled to appellate review of their unpreserved constitutional claims. *State* v. *Ramos*, 261 Conn. 156, 171, 801 A.2d 788 (2002)."

In the matter presently before this court, the defendant has sought to prevail under *Golding* and we thus consider whether: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair [conviction]; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Samuels*, 273 Conn. 541, 557, 871 A.2d 1005 (2005). We conclude that the record of the defendant's guilty plea is adequate to allow us to review his claim of error and that his claim is of constitutional magnitude, alleging a violation of due process. The defendant has not, however, demonstrated that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair conviction.

We first address the defendant's claim that he was not advised of the elements of the offense to which he was pleading guilty. The defendant essentially contends that, when the state's attorney requested that he enter his plea to a "substituted charge of assault in the second degree" followed by a citation to § 53a-61, rather than

§ 53a-60, an ambiguity was created and thus he did not know whether his plea was to assault in the second or third degree. This ambiguity, he contends, was exacerbated by the trial court's failure to advise him of the elements of the charge to which he was pleading.

We acknowledge that, "[i]t is well established that a plea of guilty cannot be voluntary in the sense that it constitutes an intelligent admission that the accused committed the offense unless the accused has received real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." (Internal quotation marks omitted.) *Marshall* v. *Lonberger*, 459 U.S. 422, 436, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983). In determining whether the defendant had real notice of the charge against him, however, "[a] court must consider the 'totality of the circumstances surrounding' the entry of a plea. See *Brady* v. *United States*, 397 U.S. 742, 757, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)." *Torres* v. *McGrath*, 407 F. Sup. 551, 558 (S.D.N.Y. 2006).

Turning to the case presently before the court, we conclude that the totality of the circumstances surrounding the defendant's plea clearly indicates that the defendant understood that he was charged with, and pleaded guilty to, assault in the second degree. The short form substitute information to which he pleaded charged him with "assault second degree" in violation of § 53a-60. Thus, any discussions that the defendant had with his attorney prior to the plea hearing necessarily would have been based upon this charge in the short form information. Indeed, the plea hearing began with the defense counsel representing to the court that he had explained "the offer that the court extended" to the defendant based upon that charge. During that hearing, the defendant confirmed to the court that his attorney had reviewed the law with him "as it relates to assault in the second degree." Moreover, despite her

misstatement with respect to the statute's numerical designation, the assistant state's attorney referred to the substituted charge of assault in the second degree, and, on three separate occasions during the plea hearing, the trial court referred to assault in the second degree. When the trial court recited the maximum penalty for the charge, the penalty cited was the five year penalty for assault in the second degree, not the one year penalty for assault in the third degree. In fact, the defendant has failed to point to any evidence that would indicate that he knew that the statutory provision cited by the state's attorney referred to assault in the third degree rather than assault in the second degree. In sum, beyond this single misstatement by the assistant state's attorney, the record is otherwise devoid of any reference to assault in the third degree. Thus, we conclude that the defendant has not demonstrated any ambiguity on the record as to the charge to which he pleaded guilty.

Moreover, "[o]ur courts have stopped short of adopting a per se rule that notice of the true nature of the charge always requires the court to give a description of every element of the offense charged." (Internal quotation marks omitted.) *State* v. *Silva*, 65 Conn. App. 234, 245, 783 A.2d 7, cert. denied, 258 Conn. 929, 783 A.2d 1031 (2001). Rather, we have held that, "[u]nder *Henderson* v. *Morgan*, 426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976), even without an express statement by the court of the elements of the crimes charged, it is appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. See also *Marshall* v. *Lonberger*, [supra, 459 U.S. 436–37] (same); *Oppel* v. *Meachum*, 851 F.2d 34, 38 (2d Cir.) (under *Henderson* v. *Morgan* [supra, 647] it is normally presumed that the defendant is informed by his attorney of the charges against him

and the elements of those charges), cert. denied, 488 U.S. 911, 109 S. Ct. 266, 102 L. Ed. 2d 254 (1988). Thus, unless a record contains some positive suggestion that the defendant's attorney had not informed the defendant of the elements of the crimes to which he was pleading guilty, the normal presumption applies." (Internal quotation marks omitted.) *State* v. *Lopez*, 269 Conn. 799, 802, 850 A.2d 143 (2004); accord *Bradshaw* v. *Stumpf*, 545 U.S. 175, 125 S. Ct. 2398, 2405–2406, 162 L. Ed. 2d 143 (2005) ("[W]e have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel. . . . Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." [Citation omitted.]).

The defendant has not pointed to anything in the record containing a positive suggestion that his attorney failed to inform him of the elements of the crime to which he was pleading. In fact, the record shows that the defendant responded affirmatively to the trial court's inquiries as to whether defense counsel "went over the law with [him] as it relates to assault in the [second] degree" and whether the defendant had had enough time to discuss his plea with counsel. The defendant also affirmed, in response to the court's inquiry, that he had no questions for defense counsel "either about the law as it applies to [his] case, or the facts of [his] case." A court "may properly rely on . . . the responses of the [defendant] at the time [he] responded to the trial court's plea canvass . . . ." (Internal quotation marks omitted.) *State* v. *Casado*, 42 Conn. App.

371, 377, 680 A.2d 981, cert. denied, 239 Conn. 920, 682 A.2d 1006 (1996), citing *State* v. *Williams*, 203 Conn. 159, 170, 523 A.2d 1284 (1987). Accordingly, we conclude that, based on the record in the present case, it is appropriate to presume that defense counsel explained the nature of the offense in sufficient detail to give the defendant notice of what he was being asked to admit.

Despite the absence of a positive suggestion in the record that defense counsel had failed to inform him of the elements of the crime, the defendant claims that this court should not presume his counsel adequately explained the offense to which he was pleading. The defendant contends that defense counsel provided ineffective assistance and that "a claim of ineffective assistance of counsel . . . is a factor to be taken into consideration in determining whether a guilty plea was voluntary and intelligent." (Internal quotation marks omitted.) *State* v. *Childree*, supra, 189 Conn. 124. Specifically, the defendant alleges that the acquiescence to multiple continuances raises questions about defense counsel's competence because, absent these continuances, his plea might have been accepted before changes to the federal deportation law became effective and made aliens convicted of an aggravated felony ineligible for discretionary relief from deportation.[18] The

---

[18] Prior to April 1, 1997, § 212 (c) of the Immigration and Nationality Act; Pub. L. No. 414, § 212 (c), 66 Stat. 187; which was then codified at 8 U.S.C. § 1182 (c), permitted "the Attorney General [to] waive deportation in appropriate circumstances [i]n a case where a convicted alien demonstrated that he or she had a lawful unrelinquished domicile in the United States for at least seven years and that his or her conviction was not for an 'aggravated felony,' for which he or she had served a term of imprisonment of five years or longer." (Internal quotation marks omitted.) *Swaby* v. *Ashcroft*, 357 F.3d 156, 157 n.1 (2d Cir. 2004). Effective April 1, 1997, "[t]he Illegal Immigration Reform and Immigrant Responsibility Act of 1996 . . . Pub. L. No. 104-208, 110 Stat. [3009-597], § 304 (b), repealed § 212 (c) of the Immigration and Nationality Act . . . ." *Swaby* v. *Ashcroft*, supra, 157. In 2001, the United States Supreme Court affirmed a 2000 decision of the Court of Appeals for the Second Circuit and "held that [the] repeal of . . . § 212 (c) would have

defendant also alleges that incompetence was demonstrated by defense counsel's failure to clarify or correct the deficiencies in his guilty plea. We are not persuaded.

We previously have observed that, "[t]he transcript of the proceedings in the trial court allows us to examine the actions of defense counsel but not the underlying reasons for his actions. . . . Our role . . . is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. Without a hearing in which the reasons for counsel's decision may be elicited, any decision of ours . . . would be entirely speculative." (Citations omitted; internal quotation marks omitted.) *State* v. *Greene*, supra, 274 Conn. 152.

In the present case, the record does not reveal: (1) the circumstances surrounding the continuances that caused the defendant's plea hearing to be held after the effective date of the deportation policy change; see footnote 2 of this opinion; (2) whether a plea agreement was available before the changes to federal deportation became effective; (3) the extent of defense counsel's knowledge concerning the changes to the deportation law; (4) the advice that defense counsel gave to the defendant, if any, concerning the collateral effects of pleading guilty to certain charges; and (5) the reasons for defense counsel's decisions and actions. The record also does not reflect the nature and extent of explanations provided by defense counsel to the defendant regarding the charges against him; rather, it reflects only that such discussion occurred. These questions of fact cannot be resolved without an evidentiary hearing. See, e.g., *State* v. *Hinckley*, 198 Conn. 77, 90, 502 A.2d 388 (1985) (ineffective assistance of counsel claim pred-

an impermissibly retroactive effect on aliens who had entered into plea agreements prior to the effective date of [the repealing act] that would preserve their eligibility for § 212 (c) relief, because such aliens had likely relied on the availability of § 212 (c) relief in pleading guilty." Id., 158.

icated on defense counsel's requested jury instructions can be addressed only in collateral action because record provided no explanation for counsel's actions and, absent such information, court is "unable to evaluate whether the performance of trial counsel was within the accepted range of competence"); *State* v. *Lopez*, 77 Conn. App. 67, 78–80, 822 A.2d 948 (2003) (ineffective assistance of counsel claim resulting from defense counsel's alleged failure to ensure that defendant understood and appreciated plea bargain offer could not be brought on direct appeal because record inadequate), aff'd, 269 Conn. 799, 850 A.2d 143 (2004). Due to the lack of an evidentiary basis for the defendant's claims of ineffective assistance and our previous conclusion that there is no real ambiguity as to which crime the defendant was pleading, we conclude that the defendant has not presented us with a record adequate to demonstrate that defense counsel's assistance was so inadequate as to undermine our determination that his plea was not constitutionally infirm.

Finally, the defendant contends that he was not informed of the particular subsection of assault in the second degree to which he was pleading. The defendant claims that this is significant because, under a 2004 ruling by the Court of Appeals for the Second Circuit, not all provisions of Connecticut's statute concerning assault in the second degree would be considered deportable offenses. See *Chrzanoski* v. *Ashcroft*, 327 F.3d 188, 197 (2d Cir. 2003) (noting that intentionally causing stupor, unconsciousness or other physical impairment or injury to another person by administering, without consent, a drug, substance or preparation capable of producing same in violation of § 53a-60 [a] [4] does not meet definition of deportable offense under 18 U.S.C. § 16). The defendant apparently is claiming that his plea was not knowing because he did not know under which subsection of the statute he was being

charged and because he did not know that this distinction could have collateral deportation consequences.

The defendant's claim fails for two reasons. First, as we previously have concluded, the defendant adequately was apprised of the nature of the criminal charges against him in conformity with the federal constitutional requirement that a guilty plea, to be valid, must be knowing and voluntary. Whether the federal definition of a crime of violence under 18 U.S.C. § 16, as utilized in deportation proceedings pursuant to 8 U.S.C. § 1227 (a) (2) (A) (iii); see footnote 7 of this opinion; may be interpreted by federal courts to include, or exclude, § 53a-60, to which the defendant pleaded guilty, does not affect our analysis as to whether the defendant's plea was constitutionally sound. In other words, the federal court's analysis of a federal law cannot be said to change the nature of the Connecticut criminal charges to which the defendant pleaded, so as to now render his plea constitutionally deficient.

To the extent that the defendant contends that his plea decision might have been different had he known that the subsections of the statute could be treated differently in deportation decisions, "the Supreme Court has held that imperfect knowledge of future developments in the law has no bearing on the question of the validity of a waiver. For instance, in *Brady* v. *United States*, [supra, 397 U.S. 742], the [c]ourt observed that [a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the [s]tate's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. . . .

Id. [757] . . . . More than [thirty] years later, the Supreme Court reaffirmed *Brady* and explained that the [c]onstitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor. *United States* v. *Ruiz*, 536 U.S. 622, 630, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002)." (Internal quotation marks omitted.) *United States* v. *Simpson*, 430 F.3d 1177, 1192–93 (D.C. Cir. 2005).

Therefore, under the circumstances of the present case, we conclude that the defendant's plea was voluntary and knowing. Accordingly, we affirm the trial court's judgment convicting the defendant of assault in the second degree.

The order denying the defendant's motion to withdraw his guilty plea is reversed and the case is remanded with direction to dismiss that motion for lack of subject matter jurisdiction; the judgment of conviction is affirmed.

In this opinion SULLIVAN, C. J., and PALMER and VERTEFEUILLE, Js., concurred.

NORCOTT, J., concurring. Although I agree with the result reached by the majority, I write separately because I arrive at the same conclusion by a very different route. The majority, in my view, does not adequately consider the significant question of whether we have jurisdiction over a case in which the defendant, Mark Reid, who no longer is in the custody of the state, allowed his right of appeal to lapse nearly seven years ago. Although I ultimately agree with the majority's conclusion that we have jurisdiction to consider the defendant's direct appeal, I disagree with its decision

to exercise our rarely invoked supervisory power to reach the merits of the present case.[1]

## I

I begin with the question of whether we have subject matter jurisdiction over a direct appeal filed nearly seven years late by a defendant who no longer is in the custody of the state. Although the parties did not raise this issue, I note we have an obligation to address questions of our subject matter jurisdiction sua sponte. See *Miller* v. *Egan*, 265 Conn. 301, 323–24, 828 A.2d 549 (2003) ("we acknowledge that, because the doctrine of sovereign immunity implicates subject matter jurisdiction, we could and should have raised the issue sua sponte"). "It is axiomatic that, except insofar as the constitution bestows upon this court jurisdiction to hear certain cases . . . the subject matter jurisdiction of the Appellate Court and of this court is governed by statute." (Internal quotation marks omitted.) *Banks* v. *Thomas*, 241 Conn. 569, 582, 698 A.2d 268 (1997); see also *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983) ("The right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met."). The applicable statutes; General Statutes §§ 52-263[2] and 54-95;[3] however, merely establish the right of

---

[1] I do, however, concur fully in the majority's well reasoned conclusion that the trial court lacked jurisdiction over the defendant's motion to withdraw his guilty plea.

[2] General Statutes § 52-263 provides in relevant part: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge . . . ."

[3] General Statutes § 54-95 (a) provides in relevant part: "Any defendant in a criminal prosecution, aggrieved by any decision of the Superior Court, upon the trial thereof, or by any error apparent upon the record of such prosecution, may be relieved by appeal, petition for a new trial or writ of error, in the same manner and with the same effect as in civil actions. . . ."

appeal from a final judgment of the trial court, and do not provide specific guidance as to the limits of appellate jurisdiction.

The legislature has left the duty of crafting specific rules governing appellate procedure to the judiciary. See General Statutes §§ 51-14[4] and 52-264.[5] In the present case, the defendant's motion to withdraw his guilty plea, which the majority treats as a request to file an untimely appeal, was filed almost seven years after the expiration of the twenty day period for filing an appeal provided in Practice Book § 63-1.[6]

Nevertheless, it is well established that, as enumerated in § 51-14 (a), time restrictions contained in the rules of practice are not jurisdictional in nature because they do not reflect "constitutionally or legislatively created condition[s] precedent to the jurisdiction of this court. The source of the authority for the adoption of

---

[4] General Statutes § 51-14 (a) provides: "The judges of the Supreme Court, the judges of the Appellate Court, and the judges of the Superior Court shall adopt and promulgate and may from time to time modify or repeal rules and forms regulating pleading, practice and procedure in judicial proceedings in courts in which they have the constitutional authority to make rules, for the purpose of simplifying proceedings in the courts and of promoting the speedy and efficient determination of litigation upon its merits. The rules of the Appellate Court shall be as consistent as feasible with the rules of the Supreme Court to promote uniformity in the procedure for the taking of appeals and may dispense, so far as justice to the parties will permit while affording a fair review, with the necessity of printing of records and briefs. *Such rules shall not abridge, enlarge or modify any substantive right nor the jurisdiction of any of the courts.* Subject to the provisions of subsection (b), such rules shall become effective on such date as the judges specify but not in any event until sixty days after such promulgation." (Emphasis added.)

[5] General Statutes § 52-264 provides in relevant part: "The judges of the Supreme Court shall make such orders and rules as they deem necessary concerning the practice and procedure in the taking of appeals and writs of error to the Supreme Court . . . ."

[6] Practice Book § 63-1 (a) provides in relevant part: "Unless a different time period is provided by statute, an appeal must be filed within twenty days of the date notice of the judgment or decision is given. . . ."

the rule lies in the inherent right of constitutional courts to make rules governing their procedure." *LaReau* v. *Reincke*, 158 Conn. 486, 492, 264 A.2d 576 (1969); see also General Statutes § 51-14 (a) ("[the rules of practice] shall not abridge, enlarge or modify any substantive right nor the jurisdiction of any of the courts"). Accordingly, this court has, in past situations, concluded that it was empowered to hear late appeals, both at the agreement of the parties and over a party's timely filed motion to dismiss. See, e.g., *Connelly* v. *Doe*, 213 Conn. 66, 69–70 n.5, 566 A.2d 426 (1989) (concluding that, despite state's attorney's failure to file timely appeal, defendant's motion to dismiss for want of subject matter jurisdiction was "without merit because the time limited for filing an appeal is not jurisdictional"); *Silverman* v. *St. Joseph's Hospital*, 168 Conn. 160, 170–71, 363 A.2d 22 (1975) (concluding that court was "merely exercising the undoubted appellate jurisdiction which [it] has over the judgment of a trial court in this state" despite fact that appeal was filed nearly one year late).

Indeed, we have, on other occasions, determined that even certain *statutory* time limits on the filing of an appeal did not bar this court from exercising jurisdiction. See *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 762–64, 628 A.2d 1303 (1993). In *Ambroise*, we concluded not only that time limitations contained in the rules of practice were not jurisdictional, but also that the proper inquiry when faced with a statutory limitation on the right of appeal becomes "a question of statutory construction: did the legislature, in imposing the time limitation, intend to impose a subject matter jurisdictional requirement on the right to appeal," which we approach through our normal methods of statutory interpretation. Id., 764.

Because of our historically generous construction of provisions limiting the time within which a party may appeal, I agree with the majority that, despite the extraordinary delay between the defendant's sentenc-

ing and the present matter, this court theoretically could exercise jurisdiction over the present case. Although there are a handful of other states that adopt similarly open ended views of appellate jurisdiction,[7] I note that this position deviates from the vast majority of federal and sister state precedent, which strictly construes as jurisdictional temporal limitations on the right of appeal.[8] I, therefore, would not invoke our jurisdiction

[7] See *Isaacson Structural Steel Co.* v. *Armco Steel*, 640 P.2d 812, 815 n.8 (Alaska 1982) (failure to file timely notice of appeal does not create jurisdictional defect); *In re Richard S.*, 54 Cal. 3d 857, 863, 819 P.2d 843 (1991) (failure to comply with rules of practice or statutory requirements for appeal did not necessarily divest court of jurisdiction, rather "the question whether failure to comply with the rule deprives the tribunal of jurisdiction is one of legislative intent"); *State* v. *Knight*, 80 Haw. 318, 323, 909 P.2d 1133 (1996) ("As a general rule, compliance with the requirement of timely filing of a notice of appeal is jurisdictional, and we must dismiss an appeal on our motion if we lack jurisdiction. . . . However, we have permitted belated appeals under [certain] circumstances, namely, when . . . defense counsel has inexcusably or ineffectively failed to pursue a defendant's appeal from a criminal conviction in the first instance." [Citations omitted; internal quotation marks omitted.]); *Johnson* v. *Smith*, 885 S.W.2d 944, 949–50 (Ky. 1994) (timely filing of notice of appeal is not jurisdictional but is matter of procedure); *Commonwealth* v. *Pappas*, 432 Mass. 1025, 1026 n.1, 735 N.E.2d 1240 (2000) (late filing of notice of appeal does not divest appellate court of jurisdiction); *Schaefco, Inc.* v. *Columbia River Gorge Commission*, 121 Wash. 2d 366, 370–71, 849 P.2d 1225 (1993) (late filing of appeal does not bar review if equity demands it).

[8] *Torres* v. *Oakland Scavenger Co.*, 487 U.S. 312, 315, 108 S. Ct. 2405, 101 L. Ed. 2d 285 (1988) ("[Federal Rules of Appellate Procedure 3 and 4] combine to require that a notice of appeal be filed with the clerk of the [D]istrict [C]ourt within the time prescribed for taking an appeal. Because the timely filing of a notice of appeal is mandatory and jurisdictional . . . compliance with the provisions of those rules is of the utmost importance." [Citation omitted; internal quotation marks omitted.]); *Woods* v. *State*, 371 So. 2d 944, 945 (Ala. 1979) ("[t]imely filing of notice of appeal is a jurisdictional requisite"); *In re Marriage of Gray*, 144 Ariz. 89, 90, 695 P.2d 1127 (1985) ("[c]ertainly, the timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review"); *Stacks* v. *Marks*, 354 Ark. 594, 599, 127 S.W.3d 483 (2003) ("[t]imely filing of a notice of appeal is jurisdictional"); *Estep* v. *People*, 753 P.2d 1241, 1246 (Colo. 1988) ("[t]he timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review"); *Carr* v. *State*, 554 A.2d 778, 779 (Del. 1989) ("[t]ime is a jurisdictional requirement"); *Peltz* v. *District Court of Appeal*, 605 So. 2d 865, 866 (Fla. 1992) ("[t]he untimely filing of a notice of appeal precludes the appellate court from exercising jurisdiction"); *Cain* v. *State*, 275 Ga. 784, 784–85, 573 S.E.2d 46 (2002)

over this very late appeal without a complete analysis of the supervisory powers by which we may overlook the lapse of the twenty day appeal period.

## II

Although I agree with the majority's conclusion that we could have jurisdiction, I disagree with its decision

("[t]imely filing of a notice of appeal is a jurisdictional requisite"); *Hoskinson* v. *Hoskinson*, 139 Idaho 448, 464, 80 P.3d 1049 (2003) (timely appeal filing is jurisdictional requirement); *People* v. *Partee*, 125 Ill. 2d 24, 33, 530 N.E.2d 460 (1988) (same); *Ostertag* v. *Ostertag*, 755 N.E.2d 686, 687 (Ind. App. 2001) (same); *Albia* v. *Stephens*, 461 N.W.2d 326, 328 (Iowa 1990) ("[f]ailure to give a timely notice of appeal is jurisdictional"); *State* v. *Moses*, 227 Kan. 400, 404, 607 P.2d 477 (1980) (filing of appeal within 130 day period fixed by statute is jurisdictional); *State* v. *Ellis*, 272 A.2d 357, 359 (Me. 1971) (no jurisdiction to review appeal of bail bond forfeiture decision where notice of appeal not filed within required time); *State* v. *Barrett*, 694 N.W.2d 783, 786 (Minn. 2005) ("[e]xcept for the timely filing of the notice of appeal, a party's failure to comply with the appellate rules does not affect the validity of the appeal" [internal quotation marks omitted]); *Smith* v. *Parkerson Lumber, Inc.*, 890 So. 2d 832, 834 (Miss. 2003) ("if the notice of appeal is not timely filed, the appellate court simply does not have jurisdiction"); *DeBose* v. *State*, 267 Neb. 116, 119, 672 N.W.2d 426 (2003) ("[i]n order to vest an appellate court with jurisdiction, a notice of appeal must be [timely] filed"); *Lozada* v. *State*, 110 Nev. 349, 352, 871 P.2d 944 (1994) (timely filing notice of appeal is jurisdictional requirement); *People* v. *Thomas*, 47 N.Y.2d 37, 43, 389 N.E.2d 1094, 416 N.Y.S.2d 573 (1979) ("the time limits within which appeals must be taken are jurisdictional in nature and courts lack inherent power to modify or extend them"); *State* v. *Guthmiller*, 497 N.W.2d 407, 408 (N.D. 1993) (time limit for filing notice of appeal is jurisdictional); *Cleveland Electric Illuminating Co.* v. *Lake County Board of Revision*, 96 Ohio St. 3d 165, 168, 772 N.E.2d 1160 (2002) ("[f]iling requirements for notices of appeal are mandatory, jurisdictional requirements which cannot be waived" [internal quotation marks omitted]); *Young* v. *Peterson*, 304 Or. 421, 422, 746 P.2d 217 (1987) (pursuant to statute, timely filing appeal is jurisdictional requirement); *Sadisco of Greenville, Inc.* v. *Board of Zoning Appeals*, 340 S.C. 57, 59, 530 S.E.2d 383 (2000) (timely filing of notice of appeal is jurisdictional prerequisite); *State* v. *Mulligan*, 696 N.W.2d 167, 169 (S.D. 2005) ("it is settled law that the failure to timely file a notice of appeal is a jurisdictional defect"); *Massey* v. *State*, 592 S.W.2d 333, 334 (Tenn. Crim. App. 1979) (like federal rule after which it was modeled, Tennessee rule mandating that appeals be filed within thirty days is jurisdictional); *Verburgt* v. *Dorner*, 959 S.W.2d 615, 617 (Tex. 1997) (timely filing of notice is jurisdictional requirement); *Manning* v. *State*, 122 P.3d 628, 635–36 (Utah 2005) (same); *In re Shantee Point, Inc.*, 174 Vt. 248, 259, 811 A.2d 1243 (2002) (same); *Dobberfuhl* v. *Madison White Trucks, Inc.*, 118 Wis. 2d 404, 405–406, 347 N.W.2d 904 (App. 1984) (same).

to use our supervisory power to reach the merits of the present case. In my view, the majority's decision to do so constitutes a broad and unprecedented application of our supervisory power.

"As an appellate court, we possess an inherent supervisory authority over the administration of justice." *State* v. *Patterson*, 230 Conn. 385, 397, 645 A.2d 535 (1994); see also Practice Book § 60-2 ("[t]he supervision and control of the proceedings on appeal shall be in the court having appellate jurisdiction from the time the appeal is filed, or earlier, if appropriate"); Practice Book § 60-3 (authorizing court to "suspend the requirements or provisions of any of these rules [of practice] in a particular case on motion of a party or on its own motion"). However, "[o]ur supervisory powers are not a last bastion of hope for every untenable appeal. They are an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Constitutional, statutory and procedural limitations are generally adequate to protect the rights of the defendant and the integrity of the judicial system. Our supervisory powers are invoked only in the rare circumstance where these traditional protections are inadequate to ensure the fair and just administration of the courts." (Citations omitted; internal quotation marks omitted.) *State* v. *Hines*, 243 Conn. 796, 815, 709 A.2d 522 (1998). A survey of the relevant cases illustrates the limited circumstances under which this court traditionally has granted review of claims not timely appealed, none of which are present in this case.

In *State* v. *Stead*, 186 Conn. 222, 224, 440 A.2d 299 (1982), the defendant was found guilty of robbery in the first degree and larceny in the first degree following

a jury trial and was sentenced on November 6, 1979. The defendant, through counsel, timely moved for an extension of time to file an appeal two days thereafter. Id. Shortly thereafter, the defendant, who had been represented at trial by private counsel, requested the appointment of a public defender to prosecute his appeal. Id. The defendant's new counsel filed a supplemental motion for an extension of time to file an appeal, which the trial court granted, setting January 15, 1980, as the deadline. Id. The defendant subsequently elected to have his original counsel prosecute the appeal, and the special public defender withdrew his appearance. Id., 225. It erroneously was assumed that there was another motion for extension of time to file an appeal pending, and notice of appeal was not filed by the January 15 deadline. Id., 224–25. The defendant, through his original counsel, then filed another motion for extension of time on January 25, 1980, which the trial court denied as untimely. Id., 225.

The defendant appealed from the judgment of the trial court to this court, which, pursuant to its supervisory authority, allowed the defendant to file a late appeal. Id., 229. In that case, however, the defendant's appeal was filed a mere ten days late, and we noted that, "[t]he defendant's trial counsel had expressed his client's intention to appeal, and his own intention to serve as appellate counsel, and had timely filed for a waiver of costs and fees in November, 1980. *It is clear that the defendant never waived his right of appeal* and has become mired in a procedural bog largely created by his own counsel." (Emphasis added.) Id., 228.

Subsequently, in *Banks* v. *Thomas*, supra, 241 Conn. 572, we reviewed the merits of a criminal defendant's writ of error that was filed fifteen days after expiration of the then existing statutory time period.[9] In *Banks*,

[9] General Statutes (Rev. to 1997) § 52-273 provides in relevant part: "No writ of error may be brought in any civil or criminal proceeding, unless

the defendant filed a writ of error claiming that the trial court improperly held him in summary criminal contempt of court and sentenced him to nine months imprisonment.[10] Id., 570–72. This court, after concluding that we had jurisdiction notwithstanding expiration of the statutory appeal period, reviewed the merits of the defendant's claim, and ultimately granted him relief, noting that, "[e]ven if a party to an appeal timely moves to dismiss an untimely appeal . . . [we] continue to have discretion to hear the appeal . . . ." (Internal quotation marks omitted.) Id., 586, quoting *Kelley* v. *Bonney*, 221 Conn. 549, 559, 606 A.2d 693 (1992). In that case, although we did not explicitly state that we had decided to review the defendant's claim pursuant to our supervisory authority, I am aware of no other method by which this court could waive the effect of a statutory time limitation on the right of appellate review.

Finally, in *Ramos* v. *Commissioner of Correction*, 248 Conn. 52, 55–56, 727 A.2d 213 (1999), this court addressed a case in which a prisoner had appealed from the habeas court's denial of a petition for writ of habeas corpus filed six months late due to failure of the chief public defender's office to appoint him appellate counsel. The Appellate Court, in response to the commissioner's objection to the appeal as untimely, ordered a hearing at which the petitioner was " 'to appear and give reasons, if any, why the appeal should not be dismissed as untimely . . . .' " Id., 56. Due to another oversight on the part of the chief public defender's office, counsel for the petitioner did not appear at the hearing, and the Appellate Court dismissed the defendant's

allowed and signed within two weeks after the rendition of the judgment or decree complained of. . . ."

[10] The trial court subsequently stayed the execution of the defendant's sentence pending resolution of the proceedings in this court. *Banks* v. *Thomas*, supra, 241 Conn. 580 n.9.

appeal as untimely. Id., 56–57. Following our grant of the prisoner's petition for certification, we concluded that the Appellate Court abused its discretion by denying the late appeal because, not only did the petitioner repeatedly request that his appeal be prosecuted,[11] but also because "the delay in the appeal cannot be attributed to the petitioner but arose from specifically identified confusion in the office of the public defender." Id., 61–62.

Each of the previously mentioned cases differs from the present matter in three significant ways. First, appellate review in those cases was requested at most six months late, with the defendants in both *Banks* and *Stead* filing late by only a matter days. See *Ramos* v. *Commissioner of Correction*, supra, 248 Conn. 56; *Banks* v. *Thomas*, supra, 241 Conn. 622; *State* v. *Stead*, supra, 186 Conn. 223–25. Second, in each case, the defendant had clearly and unequivocally expressed his desire to appeal, but could not effectively prosecute the appeal because of various logistical or procedural shortcomings.[12] Finally, and perhaps most importantly, the defendants in each of the previously mentioned cases were either currently imprisoned, or faced imprisonment, in the absence of a favorable resolution of their appeals.

Conversely, in the present case, the defendant's motion to withdraw his guilty plea was filed nearly

---

[11] Indeed, the court in *Ramos* noted that the defendant therein clearly attempted to assert his right to appeal, stating: "Throughout the proceedings that followed, the petitioner manifested his intent to appeal the dismissal of his petition." *Ramos* v. *Commissioner of Correction*, supra, 248 Conn. 55.

[12] I further note that logistical or procedural difficulties, such as institutional problems like confusion between a defendant's appointed attorneys, satisfies the requirement that a party desiring to file a late appeal demonstrate, under Practice Book § 60-2 (6), "good cause" for the late filing. See *Alliance Partners, Inc.* v. *Voltarc Technologies, Inc.*, 263 Conn. 204, 211, 820 A.2d 224 (2003) (Appellate Court did not abuse its discretion by denying permission to file late appeal occasioned by counsel's misreading of rules of practice).

*seven years* after the date of his guilty plea and sentencing, which the majority treats as a late direct appeal.[13] Furthermore, nothing in the record indicates that the defendant in the present case desired to appeal his conviction anywhere near the time of his guilty plea. Indeed, the defendant affirmatively stated that he desired to plead guilty despite the trial court's warning that he might face "other consequences, such as deportation . . . from the United States, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Thus, unlike the defendants in the previously cited cases, who each possessed, at the close of their proceedings before the trial court, a clearly expressed desire and intent to appeal, there is no evidence that the defendant in the present case seeks to appeal his seven year old conviction for any reason other than his unhappiness with the then unforeseen collateral consequences of his decision to plead guilty nearly seven years ago.

Finally, unlike the defendants in the previously cited cases, the defendant herein faces no present incarceration or threat of incarceration. Although he is, by virtue of the actions of another sovereign prohibited from reentering the United States, the defendant is not in any way imposed upon by the state of Connecticut and is, in fact, free to travel wherever he desires, except for the United States.[14]

---

[13] The defendant pleaded guilty and was sentenced to one year imprisonment on April 25, 1997. He filed a motion to withdraw his guilty plea on February 24, 2004.

[14] The majority correctly states that "[t]he defendant cannot bring an action for state habeas corpus relief because he is no longer in the custody of the government." See footnote 17 of the majority opinion; see, e.g., *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 530–31, 876 A.2d 1178 (2005). Federal courts disagree on whether a person who has been denied reentry into the United States is in "custody" within the meaning of the federal habeas corpus statute, 28 U.S.C. § 2241 (c) (1). Compare *Samirah* v. *O'Connell*, 335 F.3d 545, 551 (7th Cir. 2003) (construction of term "custody" to include people who can travel wherever they wish without reentering the United States "stretches the word . . . beyond what the English language

Accordingly, because I conclude that the trial court was without jurisdiction to consider the merits of the defendant's motion to withdraw his guilty plea and because I believe that, under the present facts, this court is ill-advised to use its supervisory authority to resurrect the defendant's seven year old claim as a direct appeal, I would affirm the judgment of the trial court. I, therefore, concur in the result.

or logic will bear") with *Subias* v. *Meese*, 835 F.2d 1288, 1289 (9th Cir. 1987) ("the requirement of custody is broadly construed to include restriction from entry into the United States, since denial of entry amounts to a restraint on liberty"). The Second Circuit Court of Appeals, however, has concluded that a deportee may challenge the legality of his deportation via petition for writ of habeas corpus. See *Swaby* v. *Ashcroft*, 357 F.3d 156, 160 (2d Cir. 2004) (The Court of Appeals concluded that prohibition from reentering the United States satisfies custody requirement because although "petitioner is no longer imprisoned . . . he faces a lifetime bar from reentering the United States as a result of having been ordered removed after an aggravated felony conviction. . . . He thereby suffers a collateral consequence." [Citation omitted; internal quotation marks omitted.]).