******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE ADRIAN K.*
## (AC 42633)

Keller, Bright and Devlin, Js.

*Syllabus*

The respondent father, whose minor child, A, previously had been adjudi-
cated neglected, appealed to this court from the judgment of the trial
court denying his motion to dismiss an order of temporary custody and
modifying the dispositive order from protective supervision with the
respondent mother to commitment to the custody of the petitioner,
the Commissioner of Children and Families. After the trial court had
adjudicated A neglected, it had ordered placement of A with the mother
with protective supervision. The petitioner thereafter placed a ninety-
six hour hold on A and filed a motion for an order of temporary custody,
which was granted ex parte. The court scheduled a preliminary hearing
on the order for temporary custody, and the petitioner filed a motion to
modify the dispositive order from protective supervision to commitment.
The trial court sustained the order of temporary custody and denied
the father's motion to dismiss, and the father appealed to this court. *Held:*

1. The respondent father could not prevail on his claim that the trial court
improperly denied his motion to dismiss the order of temporary custody,
which was based on his claim that the trial court's subject matter jurisdic-
tion ended when protective supervision expired on December 6, 2018,
and that the court's jurisdiction was not continued as a result of the
petitioner's failure to file a timely motion to modify as required under
the applicable rule of practice (§ 33a-6 [c]), which provides that a motion
to modify protective supervision shall be filed no later than the next
business day before a preliminary hearing on an ex parte custody order:
the father's claim that the trial court's subject matter jurisdiction was
limited by § 33a-6 (c) was unavailing, as rules of practice do not and
cannot create or circumscribe jurisdiction, and, thus, whether the timing
requirement of § 33a-6 (c) is mandatory or directory and whether the
motion to modify protective supervision was timely filed are irrelevant
to the question of whether the trial court had subject matter jurisdiction
to sustain the order of temporary custody; moreover, on the basis of
the plain language of the relevant statute (§ 46b-129 [b]), which provides
that a motion for an order of temporary custody may be granted subse-
quent to the filing of a neglect petition, as had occurred in the present
case, the court had jurisdiction to enter an ex parte order of temporary
custody, as the neglect petition was pending when the order of temporary
custody was signed, and the fact that a new petition was not filed with
the motion for order of temporary custody was irrelevant, and although
§ 46b-129 is silent as to whether an order of temporary custody modifies
an order of protective supervision, given the purposes underlying § 46b-
129 and the clear language of the statute (§ 46b-121 [b] [1]) that gives
the petitioner authority to enter orders regarding the protection and
proper care of a child, an order of temporary custody issued pursuant
to § 46b-129 (b) necessarily suspends or interrupts a period of protective
supervision, such that previously ordered protective supervision cannot
expire and terminate the underlying neglect petition while the order of
temporary custody is in place; accordingly, when the order of temporary
custody was granted, it essentially modified the existing period of protec-
tive supervision by suspending it, and the order of temporary custody,
which suspended the order of protective supervision, was ongoing at
the time the motion to modify was filed, and, therefore, the court had
subject matter jurisdiction over the order of temporary custody when
the petitioner subsequently filed the motion to modify the disposition.

2. The respondent father could not prevail on his claim that the court's
denial of his motion to dismiss violated his rights to substantive and
procedural due process, which was based on his unpreserved claims
that the court's interpretation of the applicable rule of practice (§ 33a-
6 [c]) as directory rather than mandatory created jurisdiction, thereby
leaving A in the petitioner's care in violation of his right to family
integrity, and deprived him of timely notice, as he failed to demonstrate

the existence of a constitutional violation pursuant to *State* v. *Golding* (213 Conn. 233): because the trial court, pursuant to statute (§ 46b-129 [b]), had ongoing jurisdiction to rule on the order of temporary custody even though neither a new neglect petition nor a motion to modify had been filed by December 6, 2018, and because Practice Book § 33a-6 (c) could not confer or circumscribe the court's jurisdiction, the father's substantive due process rights were not violated; moreover, the court did not deprive the father of his right to family integrity and timely notice because although he has a vital interest in directing the care and custody of his biological child, the court's decision to allow the petitioner to file a motion to modify one day late did not deprive the father of procedural due process or create a substantial risk of erroneous deprivation of the private interest of the father, who had notice of the ex parte order of temporary custody in advance of the preliminary hearing, was represented by counsel and had an opportunity to be heard and to contest fully the order of temporary custody and motion to modify before the court sustained the order of temporary custody and modified disposition to commitment.

Argued May 29—officially released July 18, 2019**

*Procedural History*

Petition to adjudicate the respondents' minor child neglected, brought to the Superior Court in the judicial district of Middletown, Juvenile Matters, where the court, *Woods, J.*, adjudicated the child neglected and ordered protective supervision; thereafter, the court, *Sanchez-Figueroa, J.*, issued ex parte orders granting temporary custody of the child to the petitioner; subsequently, the petitioner filed a motion to open and modify the disposition; thereafter, the court, *Sanchez-Figueroa, J.*, sustained the orders of temporary custody and denied the respondent father's motion to dismiss, and the respondent father appealed to this court. *Affirmed.*

*Karen Oliver Damboise*, for the appellant (respondent father).

*Carolyn A. Signorelli*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Christopher DeMatteo*, for the minor child.

*Opinion*

BRIGHT, J. The respondent father, Luis K.,[1] appeals from the judgment of the trial court denying his motion to dismiss an order of temporary custody and modifying the dispositive order from protective supervision with the mother to commitment to the custody of the petitioner, the Commissioner of Children and Families. The respondent claims that (1) the court improperly denied his motion to dismiss the order of temporary custody for lack of subject matter jurisdiction, and (2) the court's denial of his motion to dismiss violated his right to due process under the fourteenth amendment to the United States constitution. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant. On November 29, 2017, the petitioner filed a neglect petition on behalf of the infant minor child. An addendum to the petition stated that the mother had used poor judgment by leaving the child alone in a car with the respondent, who had physically abused the child in October, 2017, despite the "clear recommendation" of the Department of Children and Families (department) that the respondent be supervised at all times when he was with the child. The child was adjudicated neglected on March 6, 2018. The court, *Woods, J.*, ordered placement of the child with the mother with six months of protective supervision until September 6, 2018. Specific steps for the respondent and the mother were ordered. On April 10, 2018, the respondent was convicted of risk of injury to a child and assault in the third degree arising out of his physical abuse of the child in October, 2017. At the respondent's sentencing, the court issued a standing criminal protective order prohibiting the respondent from having any contact with the child until January 1, 2083. On August 2, 2018, the court, *Sanchez-Figueroa, J.*, granted the petitioner's motion to extend protective supervision of the child in the mother's custody until December 6, 2018. Following an in-court review on November 1, 2018, the court ordered that full custody was vested with the mother and confirmed that the period of protective supervision would expire on December 6, 2018.

On November 26, 2018, the department received a new referral alleging that the mother was engaging in substance abuse and was allowing the respondent access to the child. After an investigation, the petitioner, pursuant to General Statutes § 17a-101g, placed a ninety-six hour hold on the child and removed him from the mother's custody. On November 29, 2018, the petitioner filed a motion for an order of temporary custody, which was granted ex parte that same day.[2] A preliminary hearing was scheduled for December 7, 2018. In light of the order of temporary custody, the petitioner, pursuant to Practice Book § 33a-6 (c),[3] should have filed a motion to modify protective supervi-

sion at least one business day prior to the preliminary hearing. The petitioner, however, did not file a motion to open and modify the dispositional order of protective supervision to commitment until the morning of the hearing on December 7, 2018.

At the December 7, 2018 preliminary hearing, the respondent argued that protective supervision had expired on December 6, 2018, the motion to modify was filed one day late according to Practice Book § 33a-6 (c), and that "as of today, there is no underlying neglect petition that accompanies this order . . . of temporary custody . . . . Therefore, we would argue that the court does not have jurisdiction, as there is no underlying neglect petition and the department did not file any such motion to modify protective supervision, pursuant to this Practice Book section within the time period specified in that Practice Book section."

The court sustained the order of temporary custody without prejudice until further order of the court. The court allowed the respondent, who was represented by counsel, time to brief his jurisdictional argument. The respondent filed a motion to dismiss on December 21, 2018. Following a hearing, the court denied the motion to dismiss on January 17, 2019, reasoning that Practice Book § 33-6a (c) is directory and that the court had jurisdiction to act on the motion for an order of temporary custody. The court stated that the fact that the motion for an order of temporary custody was granted on November 29, 2018, further solidified the court's subject matter jurisdiction because the order of temporary custody was filed and signed while the existing neglect petition was still active, and the motion for an order of temporary custody served as a "tacit request to modify the disposition of the protective supervision." After a contested hearing, the court, on February 19, 2019, sustained the order of temporary custody and committed the child to the care and custody of the petitioner. The court found that the child would be in immediate physical danger from his surroundings if he were returned to the care and custody of the mother or the respondent. The court noted that the respondent could not have custody of the child due to his incarceration, and that the mother had not reached a level of understanding to make sure the child was kept safe and away from the respondent when he is released from incarceration. This appeal followed.

I

The respondent claims that the court improperly denied his motion to dismiss. He contends that the court's subject matter jurisdiction ended when protective supervision expired on December 6, 2018, and that the only mechanism to continue the court's jurisdiction was for the petitioner to file a timely motion to modify. He argues that there was no pending controversy because the petitioner's motion to modify was filed

untimely on the day of the preliminary hearing in contravention of what the respondent argues is a mandatory requirement of Practice Book § 33a-6 (c) to file such a motion one business day before the preliminary hearing.[4] We do not agree.

"[I]t is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . When reviewing an issue of subject matter jurisdiction on appeal, [w]e have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it . . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction. . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Citation omitted; internal quotation marks omitted.) *Keller* v. *Beckenstein*, 305 Conn. 523, 531–32, 46 A.3d 102 (2012).

The respondent's claim is premised, in part, on his argument that Practice Book § 33a-6 (c) acts as a limit on the court's subject matter jurisdiction. In particular, he argues that "[b]y [the petitioner] failing to file the motion [to modify protective supervision] within the mandatory time frame prescribed by . . . [§ 33a-6 (c)], the court lacked jurisdiction to continue to preside over the matter." The respondent's reliance on a Superior Court rule of practice is misplaced. The law is clear that rules of practice adopted by our courts do not and cannot create or circumscribe jurisdiction. General Statutes § 51-14 (a) explicitly provides that the rules adopted by the justices of the Supreme Court, the judges of the Appellate Court and the judges of the Superior Court "shall not abridge, enlarge or modify any substantive right or the jurisdiction of any of the courts." See also *State* v. *Reid*, 277 Conn. 764, 776 n.14, 894 A.2d 963 (2006); *State* v. *Carey*, 222 Conn. 299, 307, 610 A.2d 1147 (1992). Consequently, whether the timing requirement of § 33a-6 (c) is mandatory or directory and whether the motion to modify protective supervision was timely filed are irrelevant to the question of whether the court had subject matter jurisdiction to sustain the order of temporary custody.

The real crux of the respondent's argument is that because the court-ordered period of protective supervision ended on December 6, 2018, there was no longer a neglect petition pending in the court on December 7, 2018, when the court held its preliminary hearing on the order of temporary custody. According to the respondent, because the case involving the child ended on December 6, 2018, and no new neglect petition had

been filed on behalf of the child, there was no statutory basis for the court to proceed with the hearing.

The petitioner argues that the respondent's claim is legally incorrect in that General Statutes § 46b-129 (b)[5] specifically provides that a motion for an order of temporary custody may be granted subsequent to a neglect petition, which is what occurred in this case. According to the petitioner, once the motion was granted, the court maintained continuing jurisdiction to conduct further hearings on it. The petitioner further argued in opposition to the respondent's motion to dismiss in the trial court that "an [order of temporary custody], by its nature, modifies a custodial order. It removes custody from the parent and vests it in the [petitioner] in this case. Therefore, the . . . custody of the child that was vested in the parent under protective supervision, has been modified. That protective supervision order itself has been modified. The custodial portion of that has been changed to vest that custody in the petitioner." The petitioner also relies on General Statutes § 46b-121 (b) (1), which provides, in relevant part, that "[i]n juvenile matters, the Superior Court shall have authority to make and enforce such orders directed to parents . . . as the court deems necessary or appropriate to secure the welfare, protection, proper care . . . of a child subject to the court's jurisdiction or otherwise committed to or in the custody of the [petitioner]." According to the petitioner, this statute gave the court authority to enter orders regarding the child, who was, at the time, in the petitioner's custody. We agree with the petitioner.

On the basis of the plain language of § 46b-129 (b), there is no question that the court had jurisdiction to enter the November 29, 2018 ex parte order of temporary custody and schedule a hearing on the order. Section 46b-129 (b) provides that an order of temporary custody may arise "from the specific allegations of the petition and other verified affirmations of fact accompanying the petition and application, or *subsequent thereto* . . . ." (Emphasis added.) The language "or subsequent thereto" clearly indicates that the legislature envisioned situations wherein a child's circumstances may change subsequent to the filing of a neglect petition, thereby requiring the filing of a motion for an order of temporary custody. Therefore, the court may grant a motion for an order of temporary custody subsequent to the filing of a neglect petition. In the present case, the neglect petition was still pending when the order of temporary custody was signed on November 29, 2018, and the fact that a new neglect petition was not filed with the motion for an order of temporary custody is not relevant. In fact, before the trial court, the respondent conceded that, at the time it was issued, the November 29, 2018 order of temporary custody "was a valid order."

The key issue then becomes whether the order of protective supervision expired on December 6, 2018, thereby ending the pending neglect petition, or whether, in essence, it was modified by the trial court's issuance of the ex parte order of temporary custody on November 29, 2018. We note that § 46b-129 is silent as to whether an order of temporary custody in any way modifies an order of protective supervision. Nevertheless, logic, the purposes underlying § 46b-129, and the clear language of § 46b-121 (b) (1) lead us to conclude that an order of temporary custody issued pursuant to § 46b-129 (b) necessarily suspends or interrupts a period of protective supervision, such that a previously ordered period of protective supervision cannot expire and terminate the underlying neglect petition while the order of temporary custody is in place.

First, logically, protective supervision ceases to exist when an order of temporary custody issues. Protective supervision involves the petitioner supervising someone else's, typically a parent's, custody of the child. In this case, the mother's custody of the child was the subject of the petitioner's supervision. Once the petitioner took custody of the child pursuant to the ninety-six hour hold, the petitioner was no longer supervising the mother's custody, but had assumed temporary custody of the child pending further order of the court. Consequently, as a matter of fact, at that point in time, the disposition of protective supervision had been modified and interrupted.

Second, the respondent's position would lead to bizarre results at odds with protecting a child suffering from serious physical illness or serious physical injury or who is in immediate physical danger, which is the purpose of orders issued pursuant to § 46b-129 (b). For example, under the respondent's analysis, if the ninety-six hour hold had been invoked by the petitioner at 11:59 p.m. on December 6, 2018, the petitioner would have been required to return the child to the mother at 12:01 a.m. on December 7, 2018, because the period of protective supervision would have ended. Thus, the petitioner would have been required to return the child to the same unsafe circumstance she had removed the child from just minutes before. We will not conclude that the legislature intended such an absurd result. See, e.g., *In re Corey E.*, 40 Conn. App. 366, 373–74, 671 A.2d 396 (1996) (rejecting interpretation of statute that would lead to "bizarre" result of forcing department to return child to parent whose neglect caused commitment); *In re Adrien C.*, 9 Conn. App. 506, 512, 519 A.2d 1241 (rejecting interpretation of statute that would lead to return of child to "what could be a hostile, unsafe and dangerous environment"), cert. denied, 203 Conn. 802, 522 A.2d 292 (1987).

In reaching this conclusion we find instructive the Superior Court case of *In the Interests of Felicia B.*,

Superior Court, judicial district of Middletown, Docket Nos. FO4-CP-000291, FO4-CP-000292, FO4-CP-003125, FO4-CP-003126, FO4-CP-003373 (April 21, 1999) (Quinn, J.), which addressed the interplay of orders of protective supervision and orders of temporary custody on facts similar to those in the present case. In *Felicia B.*, five children were adjudicated neglected and, on August 5, 1998, placed with their mother under protective supervision, which was set to expire on March 5, 1999. Ex parte orders of temporary custody were then issued on September 18, 1998, and a hearing was scheduled for September 24, 1998. The hearing did not go forward on that date and eventually was scheduled to proceed on March 18, 1999. At that time, the respondent moved to dismiss the orders of temporary custody because the period of protective supervision ended on March 5, 1999, thereby depriving the court of subject matter jurisdiction. The court rejected the respondent's argument. It first noted that "[c]ustody of the [children] with [the petitioner] is inherently contradictory to orders leaving the children with their mother under protective supervision. The [orders of temporary custody] must therefore either have terminated or suspended the earlier orders of protective supervision." Using tenets of statutory construction, the court interpreted the conflicting orders harmoniously and concluded that the orders of temporary custody suspended the orders of protective supervision. The court determined that "the date provided for the expiration of the orders of protective supervision, March 5, 1999, was merely a courtesy extended by the court to compute the six month period and not the controlling jurisdictional date." The court denied the respondent's motion to dismiss and concluded that the orders of temporary custody suspended the period of protective supervision such that there were still four and one half months remaining on the protective supervision orders, meaning that the court continued to have subject matter jurisdiction.

We agree with the trial court's approach in *Felicia B.*, to harmonize the conflicting orders. In the present case, the order of temporary custody, which placed the child temporarily in the custody of the petitioner, and the order of protective supervision, which placed the child in the custody of the mother, cannot coexist. Realistically, the petitioner's ninety-six hour hold on the child followed by the court's order of temporary custody, both of which occurred prior to the expiration of protective supervision, had the effect of removing the child from the care and custody of the mother. Accordingly, when the order of temporary custody was granted, it essentially modified the existing period of protective supervision by suspending it. The order of temporary custody, which suspended the order of protective supervision, was ongoing at the time the motion to modify was filed. Therefore, the court had subject matter jurisdiction over the order of temporary custody

when the petitioner subsequently filed the motion to modify the disposition.

We further note that § 46b-121 (b) (1) provides in relevant part: "In juvenile matters, the Superior Court shall have authority to make and enforce such orders directed to parents . . . as the court deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child subject to the court's jurisdiction or otherwise committed to or in the custody of the [petitioner]. . . ." Even if we were to conclude, which we do not, that the protective supervision expired on December 6, 2018, and the underlying neglect petition had been terminated, the trial court nonetheless had the authority to issue an order of temporary custody pursuant to § 46b-121 (b) (1) to protect the child who was "otherwise . . . in the custody of the [petitioner]."

On the basis of the foregoing, we conclude that the trial court had jurisdiction over the order of temporary custody. Accordingly, the court properly denied the respondent's motion to dismiss.

II

The respondent next claims that his constitutional rights to (1) substantive and (2) procedural due process were violated by the court's denial of his motion to dismiss. We are not persuaded.

A

The respondent argues that the court's interpretation of Practice Book § 33a-6 (c) as being directory improperly created jurisdiction thereby leaving the minor child in the petitioner's care in violation of his constitutional right to family integrity.[6] We disagree.

The respondent concedes that this claim is unpreserved and seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Under *Golding*, "a [respondent] can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the [petitioner] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [respondent's] claim will fail." (Emphasis omitted; footnote omitted.) Id.; see *In re Yasiel R.*, supra, 781, (modifying third prong of *Golding* by eliminating word "clearly").

The record is adequate for review, and the claim, which involves the custody and care of the respondent's

biological child, is of constitutional magnitude. See *In re Zoey H.*, 183 Conn. App. 327, 348, 192 A.3d 522 ("[p]arents have a substantive right under the [d]ue [p]rocess [c]lause to remain together [with their children] without the coercive interference of the awesome power of the state" [internal quotation marks omitted]), cert. denied, 330 Conn. 906, 192 A.3d 425 (2018). Therefore, the claim is reviewable.

Regarding the third prong of *Golding*, we conclude, however, that the alleged constitutional violation does not exist. Interpreting Practice Book § 33a-6 (c) as directory does not expand the trial court's jurisdiction because, as we stated in part I of this opinion, the rules of practice cannot confer or circumscribe the court's jurisdiction. Under § 46b-129 (b), the trial court had ongoing jurisdiction to rule on the order of temporary custody even though neither a new neglect petition nor a motion to modify had been filed by December 6, 2018. Accordingly, the respondent's substantive due process rights were not violated.

### B

The respondent next argues that by failing to interpret Practice Book § 33a-6 (c) as being mandatory, the court deprived him of his right to family integrity and timely notice. The respondent's claim meets the first two prongs of *Golding* for the same reasons as stated in part II A of this opinion and, therefore, is reviewable. The respondent's claim fails to satisfy the third prong of *Golding* because the alleged constitutional violation does not exist.

"The United States Supreme Court established a three-pronged balancing test in *Mathews* [v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)] to determine what safeguards the federal constitution requires to satisfy procedural due process. Courts apply that balancing test when the state seeks to terminate parental rights. . . . The three factors to be considered are (1) the private interest that will be affected by the state action, (2) the risk of an erroneous deprivation of such interest, given the existing procedures, and the value of any additional or alternate procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens attendant to increased or substitute procedural requirements. [Id., 335.]" (Citations omitted.) *In Re Shaquanna M.*, 61 Conn. App. 592, 606, 767 A.2d 155 (2001).

Under the first factor, the respondent has a vital interest in directing the care and custody of his biological child. See *In re Baby Girl B.*, 224 Conn. 263, 279, 618 A.2d 1 (1992) ("the interest of parents in their children is a fundamental constitutional right that undeniably warrants deference and, absent a powerful countervailing interest, protection"). We are not persuaded, under the second factor, that the court's exercise of its discre-

tion to permit the department to file a motion to modify one day late created a substantial risk of an erroneous deprivation of the respondent's private interest. The respondent had notice of the ex parte order of temporary custody in advance of the preliminary hearing. He was represented by counsel and had an opportunity to be heard at the preliminary hearing. Furthermore, the respondent had an opportunity to contest fully the order of temporary custody and the motion to modify the disposition before the court sustained the order of temporary custody and modified disposition to commitment on February 19, 2019. Regarding the third factor, "the express public policy of this state [is] to provide all of its children a safe, stable nurturing environment." *State* v. *Anonymous*, 179 Conn. 155, 171, 425 A.2d 939 (1979).

In balancing the factors, we conclude that the court's decision to accept the petitioner's motion to modify, which had been filed one day later than the time set forth in our rules of practice, when the respondent had notice of the order of temporary custody over which the court had jurisdiction, and when the respondent was afforded an opportunity to contest fully the order of temporary custody, did not deprive him of his right to procedural due process. Accordingly, we conclude that the respondent has not demonstrated the existence of a constitutional violation.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** July 18, 2019, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The father is referred to herein as the respondent. The mother, Kali D., although also a respondent in the underlying proceedings, did not appeal, and for convenience is referred to herein as the mother.

[2] The court also ordered specific steps, which required, inter alia, that the mother comply with the lifetime criminal protective order as it pertains to the respondent and the child.

[3] Practice Book § 33a-6 provides in relevant part: "(a) If the judicial authority finds, based upon the specific allegations of the petition and other verified affirmations of fact provided by the applicant, that there is reasonable cause to believe that: (1) the child or youth is suffering from serious physical illness or serious physical injury or is in immediate physical danger from his or her surroundings and (2) that as a result of said conditions, the child's or youth's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's or youth's safety, the judicial authority shall, upon proper application at the time of filing of the petition or at any time subsequent thereto, either (A) issue an order to the respondents or other persons having responsibility for the care of the child or youth to appear at such time as the judicial authority may designate to determine whether the judicial authority should vest in some suitable agency or person the child's or youth's temporary care and custody pending disposition of the petition, or (B) issue an order ex parte vesting in some suitable agency or person the child's or youth's temporary care and custody.

"(b) A preliminary hearing on any ex parte custody order or order to appear issued by the judicial authority shall be held as soon as practicable but not later than ten days after the issuance of such order.

"(c) If the application is filed subsequent to the filing of the petition, a

motion to amend the petition or to modify protective supervision shall be filed no later than the next business date before such preliminary hearing.''

[4] The attorney for the minor child argued in his appellate brief that the court improperly denied the respondent's motion to dismiss because the expiration of protective supervision deprived the court of subject matter jurisdiction, and the ex parte order of temporary custody did not interrupt or toll the period of protective supervision. The attorney for the minor child adopted the brief of the petitioner as to the respondent's constitutional claim, which is addressed in part II of this opinion.

[5] Section 46b-129 (b) provides in relevant part: ''If it appears from the specific allegations of the petition and other verified affirmations of fact accompanying the petition and application, *or subsequent thereto*, that there is reasonable cause to believe that (1) the child or youth is suffering from serious physical illness or serious physical injury or is in immediate physical danger from the child's or youth's surroundings, and (2) as a result of said conditions, the child's or youth's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's or youth's safety, the court shall either (A) issue an order to the parents or other person having responsibility for the care of the child or youth to appear at such time as the court may designate to determine whether the court should vest the child's or youth's temporary care and custody in a person related to the child or youth by blood or marriage or in some other person or suitable agency pending disposition of the petition, or (B) issue an order ex parte vesting the child's or youth's temporary care and custody in a person related to the child or youth by blood or marriage or in some other person or suitable agency. A preliminary hearing on any ex parte custody order or order to appear issued by the court shall be held not later than ten days after the issuance of such order. . . .'' (Emphasis added.)

[6] The respondent's purported concern about his right to family integrity is somewhat curious given that he is prohibited from having any contact with the child until January 1, 2083.

———————————————————